117 So.2d 216 (1959)
Mary L. MEYER, Petitioner,
v.
FLORIDA INDUSTRIAL COMMISSION, Respondent.
No. 1190.
District Court of Appeal of Florida. Second District.
December 11, 1959.
Rehearing Denied January 25, 1960.
*217 Hardee & Ott, Tampa, for petitioner.
Burnis T. Coleman, Lawrence Kanzer, Tallahassee, for respondent.
SEBRING, HAROLD L., Associate Judge.
This is a certiorari proceeding to review an unemployment compensation order denying unemployment benefits to the petitioner.
The case arose under Chapter 443, Florida Statutes 1957, F.S.A., which, after setting up a plan for the payment of unemployment benefits to certain employees, provides that unemployed persons shall be disqualified for such benefits
"(4) For any week with respect to which the [Florida Industrial Commission or any member thereof acting for the Commission] finds that his total or partial unemployment is due to a labor dispute in active progress which exists at the factory, establishment or other premises at which he is or was last employed; provided, that this subsection shall not apply if it is shown to the satisfaction of the commission that;
"(a) He is not participating in or financing, or directly interested in the labor dispute which is in active progress; provided, however, that the payment of regular union dues shall not be construed as financing a labor dispute within the meaning of this section; and
"(b) He does not belong to a grade or class of workers of which immediately before the commencement of the labor dispute there were members employed at the premises at which the labor dispute occurs any of whom are participating in, or financing, or directly interested in the dispute; provided, that if in any case separate branches of work which are commonly conducted as separate businesses in separate premises, or are conducted in separate departments of the same premises, each department shall, for the purpose of this subsection be deemed to be a separate factory, establishment or other premises." F.S.A. § 443.06.
According to the facts on which the order sought to be reviewed was based, the petitioner, Mary L. Meyer, was an employee of Florida Citrus Canners Cooperative, where she worked as a citrus grader. She maintained membership in Local 173, International Brotherhood of Teamsters, as did certain other employees in the plant. While so employed by Citrus Canners, differences arose between the employer and the petitioner, represented by her union, concerning terms and conditions of employment. When these differences could not be resolved, the Union, on January 17, 1958, called a strike and began picketing the plant. After the strike was called, the petitioner did not go to work but instead joined in the strike and served on the picket line. When she failed to report for work because of the strike, her employer informed her, on January 22, 1958, that she was being discharged from employment and would be replaced by another worker. After her discharge, the employer continued operating its plant with non-striking employees until the plant shut down at the end of the citrus season, sometime after March 31, 1958. From January 17, 1958, the day the strike was called, until September 9, 1958, the day the Union called off the strike and removed the pickets from the plant, the petitioner served on the picket line on the average of three hours a day for four days *218 a week. While out on strike she received strike benefits. Throughout the active progress of the strike, and thereafter through October 30, 1958 (the day the hearing was held before the Appeals Referee of the Unemployment Compensation Division of the Florida Industrial Commission), the petitioner had no steady employment of any kind, but did occasional odd jobs for other employers.
When notified by her employer on January 22, 1958, that she had been discharged and replaced by another worker, the petitioner, through her union, filed unfair labor practice charges with the National Labor Relations Board. Subsequently, a trial examiner of the National Labor Relations Board filed an intermediate report with the National Labor Relations Board recommending that the employer be required to reinstate the petitioner with back pay, and, upon request of the Union, to engage in bargaining with it as the representative of certain plant employees including the petitioner. After the report and recommendations of the trial examiner were filed, the union membership voted to release the petitioner for re-employment with the employer. Thereafter, on September 9, 1958, the petitioner notified the employer of her willingness to return to work but the employer refused to rehire her. Instead, the employer filed an appeal to the National Labor Relations Board in an attempt to secure a reversal of the trial examiner's intermediate report and recommendation. The appeal was still pending before the National Labor Relations Board on October 30, 1958, the day the hearing was held before the Appeals Referee of the Unemployment Compensation Division of the Florida Industrial Commission on petitioner's claim for State unemployment benefits.
On December 2, 1958, the employer rehired the petitioner, not to perform her customary work as a citrus grader, but to perform the work of a citrus sectionizer at a lesser rate of pay. At the time she was rehired, the charges filed by the petitioner with the National Labor Relations Board had not been withdrawn, and the appeal filed by the employer with the Board was still pending.
On these facts the Appeals Referee of the Unemployment Compensation Division of the Florida Industrial Commission found and ordered, on November 12, 1958, that the petitioner was employed by employer to January 17, 1958, when she became unemployed due to a labor dispute that began active progress on that date; that after the beginning of the dispute she obtained other employment but continued her participation in the dispute by engaging in a strike called at the plant as the result of the failure to settle the dispute; that she picketed the plant of her employer and received strike benefits; that although the strike ceased on September 8, 1958, there were, as of that date, and as of the date of the hearing before the Appeals Referee on October 30, 1958, matters pertaining to the labor dispute that were awaiting decision by the National Labor Relations Board, wherein, when a final decision was made by the Board, the employer might be required to pay back wages to the petitioner that were lost due to the labor dispute; that in these circumstances the petitioner was disqualified from receiving unemployment benefits "through the date of this hearing and thereafter until [she is] no longer unemployed due to a labor dispute in active progress where [she is or was] last employed, and [meets] all other eligibility requirements of the Unemployment Compensation Law."
On December 17, 1958, the petitioner applied to the Florida Unemployment Compensation Board of Review for leave to appeal from this decision of the Appeals Referee. The application was denied by the Board and thus the decision of the Appeals Referee became the decision of the Board. Section 443.07(4) (c), Florida Statutes, F.S.A. Thereafter, the petitioner brought this certiorari proceeding to review the decision. Section 443.07(4) (e), Florida Statutes, F.S.A.
*219 It is contended by the petitioner that the facts of the case do not support the finding of the Unemployment Compensation Board of Review, that a labor dispute was in "active progress" at the plant of the employer for the whole period for which benefits were denied; that although a labor dispute came into being on January 17, 1958, the "active progress" of the labor dispute terminated on September 9, 1958, when the Union called off its strike, removed the picket line from employer's plant, and released the petitioner for re-employment.
We cannot agree with this contention. As we understand the term "labor dispute," it includes any controversy between employer and employee concerning wages, hours, working conditions or terms of employment. Ablondi v. Board of Review, 8 N.J. Super. 71, 73 A.2d 262. When once a "labor dispute" begins, it remains in "active progress" until it is finally settled, terminated or completely abandoned. Local No. 658, Boot & Shoe Workers Union v. Brown Shoe Co., 403 Ill. 484, 87 N.E.2d 625; Unemployment Compensation Commission of Territory of Alaska v. Aragon, 329 U.S. 143, 67 S.Ct. 245, 91 L.Ed. 136.
In the present case the "active progress" of the labor dispute did not terminate on September 9, 1958, when the Union called off the strike, removed the picket line, and voted to release the petitioner for re-employment, for this action by the Union merely amounted to an abandonment of certain activities which were being employed by the Union to force the employer to accede to the demands which were the basis of the claim out of which the labor dispute arose. It was not an abandonment of the labor dispute itself, because at the time the decision was made by the Union to call off the strike and release the petitioner for re-employment, the claim out of which the labor dispute arose was pending before the National Labor Relations Board, and, indeed, remained pending up through the date of final decision by the Florida Unemployment Compensation Board of Review. And it is conceded by the parties to this proceeding that when the National Labor Relations Board hands down its decision, it may, if it upholds the contentions of the petitioner, represented by her union, require the employer to pay back wages for time lost from the job and reinstate the petioner to her former employment. It is our view that in these circumstances, the labor dispute which, manifestly, was of direct interest to the petitioner and was one in which she was participating, was in "active progress," within the meaning of the applicable statutes, throughout the whole period for which she was denied unemployment compensation benefits by the Florida Unemployment Compensation Board of Review.
There is another contention made by petitioner that should be noticed. The petitioner concedes that a labor dispute came into being on January 17, 1958, and thereby disqualified her for benefits for so long as her unemployment was due to the labor dispute. She contends, however, that when she was discharged on January 22, 1958, for failure to come to work the employer-employee relationship theretofore existing was thereby severed, so that after discharge her unemployment was not due to the labor dispute but to the severance from employment.
We cannot agree with this contention. As we gather from the record, the petitioner was discharged and replaced because she joined in the strike and refused to report for work. In these circumstances the employer-employee relationship was not absolutely terminated but was merely temporarily suspended until the settlement of the labor dispute or until petitioner secured bona fide permanent employment elsewhere. The petitioner has not shown that she secured other permanent employment, and the fact that, through her union, she diligently pursued her claim for reinstatement with her employer together with back pay, is evidence that she did not consider herself as a permanently discharged employee but rather as a "striking employee" entitled to reinstatement to her former position in *220 the event her unfair labor practice charges were finally sustained by the National Labor Relations Board. See Jeffrey-De Witt Insulator Co. v. N.L.R.B., 4 Cir., 1947, 91 F.2d 134, 112 A.L.R. 948; 31 Am.Jur., Labor, § 370
It is our opinion that the order brought here for review is supported by substantial evidence and that the petition for certiorari should be denied. Florida Industrial Commission v. Ciarlante, Fla., 84 So.2d 1; Florida Industrial Commission v. Nordin, Fla., 101 So.2d 890; Teague v. Florida Industrial Commission, Fla., 104 So.2d 612.
It is so ordered.
ALLEN, C.J., and SHANNON, J., concur.