STURGIS, Judge.
We consider the petition of -Post-Times Company, an employer, for a writ of certi-orari under Section 443.07(4) (e), Florida Statutes, F.S.A., to review an order of the Florida Unemployment Compensation Board of Review holding the employee-respondents, Edward T. Turner, O. E. D. Martin, Sr., and Owen I. Altee, hereinafter called the claimants, to be entitled to benefits ttnder the Unemployment Compensation Law for the period commencing June 30, 1959, and thereafter “so long as they meet the eligibility requirements of the law and are otherwise qualified,” and charging the unemployment records of the employer with any benefit payments thereunder made to the claimants subsequent to July 1, 1959.
The order in question is predicated on a finding of the Board of Review that disqualification of the claimants under Sec *361 tion 443.06(4) (a), Florida Statutes, F.S.A.[1] to receive unemployment compensation benefits during the period from February 25, 1959, through June 30, 1959, had “terminated as of June 30, 1959.” The sole question before this court is whether there was substantial competent evidence to support the mentioned finding and order.
To arrive at the finding that claimants’ disqualification terminated on June 30, 1959, the Board of Review necessarily concluded (1) that on or before that date the employer totally discontinued the type of work upon which they were engaged prior to February 25, 1959, and (2) that had they at any time subsequent to June 30, 1959, presented themselves to the employer for resumption of the duties of their former employment or for re-employment, they would have been rejected because the employer had no need for their services. Our careful review of the record reflects, however, that these conclusions are unsound because they are necessarily arrived at by building inference on inference from circumstantial evidence alone, and are further unsound because they are refuted by uncontroverted direct testimony.
At all times pertinent to this review the employer was engaged at Jacksonville, Florida, in printing and publishing several newspapers, including a local paper known as the Jacksonville Journal, and in printing and publishing newspaper-type magazines. In connection with these pursuits it has at all times operated a trade composition shop doing composing-room work, stereotype work, and photo-engraving work.
On Februaary 25, 1957, the claimants were employed as linotype operators and were members of International Typographical Union, Local 162, Jacksonville, Florida. On that date a labor dispute was in active progress between the employer and a separate labor union, International Stereotypers; and Electrotypers Union, Local 106, Jacksonville, Florida, as a result of which the respondents became unemployed because they refused to cross a picket line established by that union on employer’s premises. It is uncontested that from February 25, 1959, until June 30, 1959, these employees were disqualified to receive unemployment compensation benefits because they were participating in that labor dispute which which was admittedly in active progress. F.S. § 443.06(4) F.S.A.; see footnote 1.
Effective July 1, 1959, the employer transferred its former corporate name and the subscription list of its Jacksonville newspaper to another newspaper publisher. It retained all its other property, including shop equipment, machinery, and premises, and continued its business of publishing the other newspapers and newspaper-type magazines. Pursuant to that sale, the charter of the corporation was amended to change the corporate name from Jacksonville Journal Company to “Post-Times Company”, by which it has since been known. There was no change in the stockholders, directors, or officers of the corporation.
On July 24, 1959, employee Turner filed a claim with the Florida Industrial Commission for unemployment compensation benefits for the period subsequent to June 30, 1959, that being the date on which the strikers withdrew their picket lines. Upon the initial processing of this claim by the Florida Industrial Commission, its Claims *362 Examiner notified the employer, in substance, that the claim was allowed. Upon the employer’s protest the claim was referred to an Appeals Referee to take the proofs and render his decision in the premises. Pursuant thereto the Appeals Referee entered an order finding, in substance, that as of September 24, 1959, the labor dispute commenced February 25, 1959, remained in active progress, that claimant Turner’s unemployment was due to that dispute, and that under F.S. § 443.06(4), F.S.A., he was disqualified to receive unemployment compensation benefits for the duration of that labor dispute. Accordingly, the order reversed the holding of the Claims Examiner, and Turner appealed to the Full Commission, sitting as the Florida Unemployment Compensation Board of Review.
In the course of the above recited transactions involving the Turner claim similar claims were filed by respondents O. E. D. Martin, Sr., and Owen I. Altee. The factual background regarding their claims is the same as that of Mr. Turner, except that they were never rehired by the petitioner and that their claims were not submitted to an Appeals Referee for decision on the merits, as was the Turner claim. Instead, the record reflects that upon receiving the decision and order of the Appeals Referee holding Turner disqualified to receive benefits, and his appeal therefrom, the chairman of the Florida Industrial Commission re-referred the Turner claim to an Appeals Referee for the purpose of procuring “more testimony on whether or not the labor dispute involving the Jacksonville Journal and its successor and the Stereotypers and Elec-trotypers Union Local No. 106” was still in active progress, and directed a hearing de novo in the premises. The testimony on that hearing also embraced the Martin and Altee claims. Upon receiving the record of that hearing, held on November 30, 1959, the Board of Review rendered the order appealed, which disposed of the Turner appeal and, pursuant to assumption of jurisdiction ex mero motu of the Martin and Altee claims, as authorized by Section 443.-07(4) (c), Florida Statutes, F.S.A., also disposed of those claims. By this order the Board of Review reversed the decision of the Appeals Referee in the Turner case and held each of the claimants eligible for unemployment compensation benefits without disqualification from June 30, 1959, and thereafter so long as they meet the eligibility requirements of the law and are otherwise qualified. This order, now on review, made the following finding:
“On February 25, 1959, a labor dispute commenced at the premises of the employer, a newspaper publisher, and the claimants, refusing to cross picket lines, became unemployed. In June, 1959, the employer sold its newspaper publishing operation to another publisher, retaining merely a shop for printing but not for publishing a newspaper. When this occurred, the union considered the strike at an end and withdrew its picket lines and the labor dispute came to an end as of June 30, 1959.”
It thereupon assigned the following reason for the conclusion reached:
“When * * * the employer sold its ‘name and subscription lists’ to another newspaper, for all practical purposes it quit publishing a daily newspaper and no longer had any appreciable need for any linotype operators and stereotypers. This was not a mere change in name but a discontinuance of its type of business requiring a large number of workers. These claimants were not unemployed due to a labor dispute after the newspaper went out of business and no longer needed their services or other of similar skills.”
The quoted findings and reasoning do not find substantial support in the proofs adduced at the hearings on these claims. Contradicting these conclusions we find direct testimony to this effect:
*363 1. The claimants 1‘eceived strike benefits from their union from February 25, 1959, until the date of the last hearing upon their claims, and there was no change in these benefits for the period before and subsequent to July 1, 1959. While these facts standing alone will not necessarily preclude the right to unemployment compensation benefits, they are factors to be considered.
2. These employees voluntarily chose not to cross the picket line of February 25, 1959. Other employees of their union did cross the picket line and were put to work.
3. Neither of the claimants made any approach whatever to their employer for the purpose of resuming the work upon which he was engaged at the time he voluntarily quit that work.
4. While an officer of the Stereotypers and Electrotypers Union testified, in effect, that following June 30, 1959, the union did not consider itself as continuing the strike that commenced February 25, 1959, the undisputed proofs and record reflects: (a) that prior to February 25, 1959, notice of 30 unfair labor practice charges had been filed with the Florida Industrial Commission against the employer; (b) that none were filed thereafter; (c) that these charges were finally withdrawn in September 1959, one week after the last hearing before the Commission on the subject claims; (d) that none of the members of the striking union and only one of the claimants ever applied to petitioner for employment; (e) that petitioner continues the type of business requiring the type of work claimants were performing when they quit their jobs and has, since July 1, 1959, had positions available for persons having their skills.
At the last hearing petitioner’s employee relations consultant testified without contradiction that the last meeting of the employer with the striking union’s representatives was on February 20, 1959, in the office of the Federal Mediation and Conciliation Officer in Jacksonville, at which time it was decided that whenever the union was ready to again meet with the employer it would notify the federal mediator and employer’s representative would make himself available at such time as the federal mediator fixed; that since the establishment of the picket line there had been no attempt on the part of the union to reach a settlement; and, as of November 30, 1959 (the date of the last hearing on the proofs), the labor dispute originating on February 25, 1959, had not been settled. At that hearing the secretary-treasurer of the striking union, who apparently had no part in the negotiations preliminary to the strike, stated:
“At some time after the strike I called him and asked him did he have any word from the Journal, now I did not know if — I was under the impression that the committee could not agree at their meeting, so therefore they dismissed the meeting, and Mr. Duncan said that he did not have any word and I told him that if he received any word from the Journal to let me know so that I could convey it to the proper officers of the union, and I was not ever notified by Mr. Duncan that the Journal was in a position to continue negotiations where they had left off.”
This official further represented that although it was his understanding the union had abandoned its labor dispute, he was unable to say whether the employer or the Federal Mediation Service were notified to that effect. He did say, however, that the employer accepted the mediator’s compromise proposal and that the union rejected it.
The public policy underlying the enactment of the Florida Unemployment Compensation Law is to afford some relief to those who become and remain unemployed through no fault of their own. We are confronted with a situation where the respondent-employees voluntarily went out on strike and, despite the fact that the petitioner wanted them to come back to work and off and on during the entire period pertinent to this proceeding had job open *364 ings requiring their skills, and stood ready ■and willing to take them back as job openings were available, only claimant Turner ■applied for work and not until October 1959, whereupon he was 'rehired. Moreover, the record before this court reflects that the abovementioned charges of unfair labor practices, filed by the union with the Florida Industrial Commission, which apparently produced the strike as a result of which the respondent employees quit their jobs, were not withdrawn until subsequent to the hearings resulting in this review. Whatever the undisclosed intention of the union might have been, the controlling fact is that it did not bring home to the employer notice of termination of the strike. It would be an unconscionable and intolerable burden on management to require it to arrive at a presumption that a strike is terminated simply because picket lines are withdrawn.
In Meyer v. Florida Industrial Commission, Fla.App.1960, 117 So.2d 216, 219, under very similar facts as here, the court Reid:
■“When once a ‘labor dispute’ begins, it remains in ‘active progress' until it is finally settled, terminated or completely abandoned.”
As respects the employer’s rights, actual notice of the disposition is imperative. In the case on review the Board of Review held that the labor dispute was abandoned when the union removed the picket line on June 30, 1959. In the Meyer case, however, the union not only removed the picket line but called off the strike and the members of the union voted to allow the claimant to return to her work for the employer. In that regard Sebring, J., speaking for the court said (117 So.2d 216, 219):
“In the present case the ‘active progress’ of the labor dispute did not terminate on September 9, 1958, when the Union called off the strike, removed the picket line, and voted to release the petitioner for re-employment, for this action by the Union merely amounted to an abandonment of certain activities which were being employed by the Union to force the employer to accede to the demands which were the basis of the claim out of which the labor dispute arose. It was not an abandonment of the labor dispute itself, because at the time the decision was made by the Union to call off the strike and release the petitioner for re-employment, the claim out of which the labor dispute arose was pending before the National Labor Relations Board and, indeed, remained pending up through the date of final decision by the Florida Unemployment Compensation Board of Review.” (Emphasis supplied.)
In the instant case the union continued to finance the strike by paying benefits to the respondent employees, and it is clear that the employees found the situation to be such that they would not return to work unless and until their union business agent approved.
Each case must, of course, rest on the particular facts involved. Under the facts and circumstances presented by the petition under consideration, we conclude that the Commission, sitting as a Board of Review, was not justified in building inference on inference in order to reach a conclusion contrary to the uncontradicted positive testimony found in the record.
Certiorari is granted. The order on review is quashed and the cause remanded with directions to enter an order conformable herewith.
WIGGINTON, C. J., and CARROLL, DONALD, J., concur.

. That part of F.S. § 44S.06, F.S.A., pertinent to this review provides:
“443.06 Disqualification for benefits.— An individual shall be disqualified for benefits : * * *
“(4) For any week with respect to which the commission finds that his total or partial unemployment is due to a labor dispute in active progress which exists at the factory, establishment or other premises at which he is or was last employed; provided, that this subsection shall not apply if it is shown to the satisfaction of the commission that:
“(a) He is not participating in or financing, or directly interested in the labor dispute which is in active progress; provided, however, that the payment of regular union dues shall not be construed as financing a labor dispute within the: meaning of this section; * *