Fuld, J.
The question posed by this appeal, here by our leave, is whether mere participation by employees in a strike in violation of a “ no-strike ’ ’ clause in their collective bargaining-agreement with the employer constitutes such misconduct, within the meaning of subdivision 3 of section 593 of the Unemployment Insurance Law (Labor Law, art. 18), as to deprive them of unemployment insurance benefits.
*4 The facts are not in dispute. The claimants, 24 in number, who were employed as production workers in the employer’s plastics plant at North Tonawanda were members of the International Association of Machinists and Local Lodge 2112. The union had a collective bargaining agreement which prohibited lockouts, strikes or other work stoppages and granted the employer the right to hire, promote and transfer employees as well as to “ discharge ’ ’ employees for ‘ ‘ cause ’ h[1] The agreement further provided that all disputes were to be arbitrated under a carefully stated grievance procedure.
On October 26, 1960, at a time when several production employees were on lay-off status, the employer notified the union that its supervisory force was being reduced and that three salaried supervisory employees would be returned to their manual jobs with seniority dating back to their respective date of hiring. The officials of the local union, as well as a district representative of the International Union, viewed the proposed action by the employer as a breach of the collective bargaining agreement which had the effect of terminating the agreement. The union officials rejected the employer’s offer to arbitrate the dispute and, without formal vote, called the more than 600 workers out on strike. Owing to subsequent intervention, and urging, by officials of the International Union, the strike was discontinued after three days and the parties agreed to settle their differences through the grievance procedure prescribed by the contract.
After the strike ended, the employer discharged the 24 claimants because of their violation of the no-strike clause of the collective bargaining agreement and for “ other misconduct ”.[2]
*5 The union submitted to arbitration its assertions that the employer violated the collective bargaining agreement by (1) returning the supervisory employees to manual jobs with their bargaining unit seniority and (2) discharging the employees who had participated in the strike. The arbitrators, by a majority vote, upheld the employer’s action with respect to the transfer of the supervisory employees, sustained its discharge of four claimants and moderated the punishment of the others by suspending them for varying periods of time. However, although the arbitrators ruled that ‘ ‘ The Union membership had no right to disregard the grievance procedure and engage in a work stoppage in violation of the ‘ no strike ’ clause of the contract ’ ’, they accorded ‘6 no weight ’ ’ to the mere fact of participation in an “ illegal strike ’ ’ and upheld the discharges and suspensions solely on the basis of “ misconduct above and beyond the act of engaging in an illegal strike ’ ’.
The claimants thus disciplined filed claims with the State Department of Labor for unemployment insurance benefits. The local unemployment insurance office initially ruled that the claimants were disqualified not only (1) from receiving benefits during the three-day strike, on the ground that they lost their employment because of an ‘1 industrial controversy” (Labor Law, § 592, subd. 1)[3] but also (2) from receiving benefits after the strike terminated, upon the ground that they lost their employment through “ misconduct ” (Labor Law, § 593, subd. 3).[4] An appeal was taken solely from the “ misconduct ” portion of the determination. The Unemployment Insurance *6 Appeal Board took a different view on that issue; it decided in favor of the claimants, holding that they were not guilty of any individual acts of misconduct in connection with the strike and that their mere participation in a prohibited work stoppage was not ‘ ‘ misconduct ’ ’ as that term is used in subdivision 3 of section 593, and, on appeal by the employer, the Appellate Division affirmed that determination.
Analysis of the Unemployment Insurance Law and an understanding of the social welfare purpose sought to be served by that statute lead us to agree with the Appeal Board and the Appellate Division that subdivision 1 of section 592, providing for the suspension of the benefits for a limited period, is the exclusive provision applicable to all cases involving strikes and other industrial controversies, regardless of their legality. We conclude, therefore, that mere participation in a strike, which may be in breach of a no-strike clause, or otherwise impermissible or proscribed, does not constitute “misconduct” within the sense of subdivision 3 of section 593.
Subdivision 1 of section 592 provides, with respect to unemployment stemming from an “industrial controversy”, that benefits are “suspended” for the first seven weeks or until “ the day after such strike, lockout, or other industrial controversy [is] terminated”, whichever is sooner. The statutory language — ‘ ‘ strike, lockout, or other industrial controversy ’ ’ — is exceedingly broad, encompassing all labor disputes, all strikes, permissible as well as impermissible, legal as well as illegal. The merits of the dispute, in other words, are irrelevant on the issue whether or not an industrial controversy exists and the suspension of benefits for the initial period, as provided in subdivision 1, has nothing to do with fault or misconduct. Subdivision 1 of section 592 also declares, in identically broad language, that, if the strike or other industrial controversy terminates ‘ ‘ before the expiration of such seven weeks ” but unemployment continues, the suspension is to come to an end and benefits paid ‘ ‘ beginning with the day after [the termination of] such strike, lockout, or other industrial controversy”. By the same token, then, the payment of benefits is to be made, after the expiration of the specified period, irrespective " of who was to blame for the controversy. - -/ *«
*7 Further study confirms this conclusion. The industrial controversy provision, reflecting ‘ ‘ the principle of governmental neutrality ” (Matter of Ferrara [Catherwood], 10 N Y 2d 1, 8), represents a compromise of sorts. Faced with the choice of providing either (1) that benefits be awarded to workers, made idle by a strike or any other industrial controversy, from the day after they lost their employment or (2) that benefits be withheld altogether throughout the period of their unemployment, the Legislature took a middle course. It enacted subdivision 1 of section 592 to cover all cases of unemployment resulting from strikes and other industrial controversies. Whether the strike was a permissible and meritorious one, whether the consequent work stoppage was the fault of employer or employee, was of no consequence in determining, first, that unemployment benefits were to be suspended during the early stages of the strike and, second, that they were to be paid thereafter if the workers remained idle.
Actually, “fault” or “misconduct” is not a meaningful concept to apply to a work stoppage which results when the parties, in negotiating a collective bargaining agreement, cannot reach an understanding as to wages, hours or working conditions. If there be any “ fault ”, it is often attributable to both parties. Furthermore, even in those disputes which are precipitated by the apparent breach of an existing agreement, the determination of fault or misconduct involves questions of labor relations that are frequently complicated and recondite. It would have been decidedly unwise to vest in officials of a social welfare agency—like those administering the Unemployment Insurance Law — the power to decide such matters. They are best left to agencies especially qualified to deal with them, namely the Federal and State Labor Boards and labor arbitrators. (See Williams, The Labor Dispute Disqualification, 8 Vand. L. Rev. 338, 357, 367-374; Fierst and Spector, Unemployment Compensation in Labor Disputes, 49 Yale L. J. 461, 490; Lesser, Labor Disputes and Unemployment Compensation, 55 Yale L. J. 167, 178-180.)
It might be urged that, whenever a violation of a no-strike clause is charged, there would be no difficulty in ascertaining whether a breach had occurred. Seemingly all that would have to be found is that such a clause was part of the agreement and *8 that a strike took place. If this were so, the ease with which the finding of fact could be made would distinguish that type of unauthorized strike from all others. It may not, however, be so distinguished. Before the breach of a no-strike clause could be characterized as misconduct justifying “ discharge ” (Atkinson v. Sinclair Refining Co., 370 U. S. 238, 246), it would be essential to determine whether the breach resulted from an unfair labor practice committed by the employer (see, e.g., Mastro Plastics Corp.v. Labor Bd., 350 U. S. 270) or whether the employees acted in concert for other valid reasons, such as refusing to work under unsafe or unsanitary conditions. (See National Labor Relations Bd. v. Knight Morley Corp., 251 F. 2d 753, 759; see, also, Labor Bd. v. Washington Aluminum Co., 370 U. S. 9.) Moreover, if discharge for breaching a no-strike clause were equivalent to dismissal for misconduct under subdivision 3 of section 593, then, by parity of reasoning, whenever there was a work stoppage in order to bring about an unlawful objective — e.g., one of those prohibited by subdivision (b) of section 8 of the Taft-Hartley Act (U. S. Code, tit. 29, § 158, subd. [b])—the employees who were fired because of their participation in the stoppage would likewise have to be regarded as having lost their employment through misconduct. (Compare Atkinson v. Sinclair Refining Co., 370 U. S. 238, 246, supra, with Labor Bd. v. Sands Mfg. Co., 306 U. S. 332, 344.) This would require the very findings of fact and determinations of law which, as already pointed out, the Federal and State Labor Boards have been especially set up to consider and are best qualified to pass upon.
In short, the purpose of subdivision 1 of section 592 is clear, its language unqualified. It governs all cases of unemployment resulting from a strike or other industrial controversy and, accordingly, those administering the Unemployment Insurance Law will not be called upon, once it appears that the unemployment was brought about by a strike, to determine whether or not the employees engaged in an impermissible strike or a wrongful work stoppage. Therefore, section 593, which, on its face and in its intendment, has nothing to do with labor disputes, may not reasonably be construed to provide that employees who breach a no-strike clause — or some other provision of the col *9 lective "bargaining agreement — and thereby precipitate an industrial controversy are guilty of “misconduct” within the sense of subdivision 3.
This is not to say that the existence of an industrial controversy automatically rules out any finding of misconduct. If employees on strike commit acts of violence or sabotage, they may, of course, be found guilty of misconduct, justifying their discharge and disqualification from receiving unemployment benefits. (See, e.g., Matter of Davis [Catherwood], 24 A D 2d 904; cf. Labor Bd. v. Fansteel Corp., 306 U. S. 240; National Labor Relations Bd. v. Marshall Car Wheel & F. Co., 218 F. 2d 409.) But the present case does not involve that sort of employee misbehavior; here, there was, insofar as this appeal is concerned, nothing more than mere participation in a strike.[5]
Nor does our construction of the Unemployment Insurance Law deprive the employer of any remedy. If the union breached the no-strike clause and the employees walked off their jobs, the employer would not only be entitled to discharge the latter (see Atkinson v. Sinclair Refining Co., 370 U. S. 238, supra) but he would also be privileged to sue the union for damages. (See, e.g., Atkinson v. Sinclair Refining Co., 370 U. S. 238, supra; Teamsters Local v. Lucas Flour Co., 369 U. S. 95.) [6] To be sure, the impact of a discharge on an individual employee is somewhat alleviated by the payment of unemployment benefits but, for that matter, the impact of unemployment on an individual striker is similarly cushioned after the initial suspension period. Those results follow as a consequence of the Legislature’s judgment, deliberately arrived at, not to fix the blame for a labor dispute in an unemployment insurance proceeding. If there be unfairness in awarding benefits to claimants who cause a work stoppage, it is to be borne in mind, as already indicated, that it was designedly incorporated into the legislative *10 scheme. If the employer believes itself aggrieved, it must seek relief from the Legislature rather than from the courts.[7]
Deprecate as we do wildcat or other impermissible strikes, we cannot accept the argument that the payment of unemployment benefits has a tendency to increase the threat or likelihood of illegal strikes where the effect of such conduct on the part of employees may be discharge of the employees and recovery of damages against the union. As has been well stated (Shadur, Unemployment Benefits and “ Labor Disputes ”, 17 U. Chi. L. Rev. 294, 298), “ the prospect of receiving a fraction of normal wages after the lapse of several weeks will seldom lead a labor organization to call a strike which it would have avoided had benefits not been payable.”
In conclusion, then, the Unemployment Insurance Law may not be used as a means of disciplining or penalizing employees for breach of a collective bargaining agreement. To do so would violate the purpose which underlies this social welfare legislation. The claimants are entitled to benefits even though' their unemployment may have resulted from their violation of a no-strike clause.
The order appealed from should be affirmed, with costs.

. Section 23 of the collective bargaining agreement, which contains three provisions, reads, in pertinent part, as follows:
“ (h). There shall be no lock-out by the Company and no strike, walk-outs, suspension, retarding or stoppage of work by employees during the term of this agreement.
“ (i). Subject to the terms of this agreement, the Company reserves all of its fundamental rights as an employer to hire; promote; transfer; discipline; to maintain discipline and efficiency of employees, and to discharge for just cause.”

. The other alleged misconduct consisted of apparent leadership in the strike, shouting directions to strikers and pickets, persuading employees not to go to work and participating in surges and special massing of pickets to prevent entry into the plant.

. Subdivision 1 of section 592 reads in full: “ Industrial controversy. The accumulation of benefit rights by a claimant shall be suspended during a period of seven consecutive weeks beginning with the day after he lost his employment because of a strike, lockout, or other industrial controversy in the establishment in which he was employed, except that benefit rights may be accumulated before the expiration of such seven weeks beginning with the day after such strike, lockout, or other industrial controversy was terminated.”

. Subdivision 3 of section 593 of the Labor Law recites: “Misconduct. No days of total unemployment shall be deemed to occur after a claimant lost his last employment prior to the filing of his claim through misconduct in connection with his employment until he has subsequently worked in employment on not less than three days in each of four weeks or earned remuneration of at least two hundred dollars.”

. The appellant has not contested the finding below that the behavior of the claimants on the picket lines and during the strike did not amount to misconduct under subdivision 3 of section 593.

. Although we do not here consider or pass upon the matter, it is to be noted that there is some authority in this State that the employer may even be entitled to an injunction to restrain the strike. (Compare Perry & Sons v. Robilotto, 23 A D 2d 949 with Sinclair Refining Co. v. Atkinson, 370 U. S. 195; cf. Matter of Ruppert [Engelhofer], 3 N Y 2d 576, 581-582.)

. New York is the only State which, during an industrial controversy, suspends for a fixed period (seven weeks) the benefit rights of all workers wlio become unemployed as a result of such controversy. Consequently, the out-of-State decisions, construing significantly different legislation (see U. S. Dept. of Labor, Bureau of Employment Security, Comparison of State Unemployment Insurance Laws [1965], Table ET-5, p. ET-13), are not helpful and, in any event, are in conflict. (Compare Miller Mill Co. v. Johns, 261 Ala. 615, and Lillard v. Employment Security Comm., 364 Mich. 401 [benefits awarded], with Howard Bros. Mfg. Co. v. Director of Division of Employment Security, 333 Mass. 244; Bogue Elec. Co. v. Board of Review, 21 N. J. 431, and Streeter v. Industrial Comm., 269 Wis. 412 [benefits denied].)