388 So.2d 1254 (1980)
ITT CONTINENTAL BAKING CO., Petitioner,
v.
John T. DAVILA, Division of Employment Security, Department of Labor and Employment Security, State of Florida, and Unemployment Appeals Commission, Respondents.
ITT CONTINENTAL BAKING CO., Petitioner,
v.
Waldo CANTERO, Division of Employment Security, Department of Labor and Employment Security, State of Florida, and Unemployment Appeals Commission, Respondents.
ITT CONTINENTAL BAKING CO., Petitioner,
v.
John T. DAVILA, Division of Employment Security, Department of Labor and Employment Security, State of Florida, and Unemployment Appeals Commission, Respondents.
Nos. 79-1653, 78-2064 and 78-2066.
District Court of Appeal of Florida, Second District.
September 10, 1980.
Rehearing Denied October 20, 1980.
*1255 John-Edward Alley, Robert D. Hall, Jr., and Joseph W. Carvin of Alley & Alley, Tampa, for petitioner.
John D. Maher, Tallahassee, for respondents.
Mary Ann Stiles, Tallahassee, amicus curiae, for Associated Industries of Florida.[1]
BOARDMAN, Acting Chief Judge.
ITT Continental Baking Co., the employer for respondents Davila and Cantero (claimants), petitions for review of the decision of respondent Unemployment Appeals Commission (the Commission) ruling Davila and Cantero eligible for unemployment compensation benefits. We reverse.
Petitioner has collective bargaining relationships with several unions, including Local 361 of the Bakery and Confectionary Workers Union, with which it had a collective bargaining agreement that was in effect during all times relevant hereto. That agreement contained a no-strike clause which provided: "During the life of this agreement, there shall be no strike, walkouts, slowdowns, or stoppage of work by the employees, and there shall be no lockouts on the part of the employer."
On the afternoon of February 9, 1978, a majority of petitioner's employees walked out on a wildcat strike, in violation of this no-strike clause.
On February 11, petitioner mailed telegrams to all the striking employees notifying each that, due to the strike, he was being placed on one-week disciplinary suspension. On February 13, 1978, petitioner mailed telegrams to twelve of the employees, including claimants, who had received prior written warnings for participation in similar wildcat strikes in the past, informing them that they were being discharged due to their violation of the no-strike clause of the collective bargaining agreement and prior participation in similar actions. On February 16, 1978, the employees agreed to return to work, but only after it was agreed that meetings would be held to consider various employee complaints and that the discharges of the twelve employees would be subject to arbitration.
Nine of the twelve discharged employees, including claimants, then filed claims for unemployment compensation. The appeals referee found that claimants' unemployment was due to a labor dispute as defined in Section 443.06(4), Florida Statutes (1977), thus rendering the claimants disqualified for benefits. The referee found that "a labor dispute commenced active progress on February 9, 1978," that "the claimant[s] actively and directly participated in the activities of this labor dispute," and that claimants' employment status was pending collective bargaining arbitration. The Commission reversed the decisions of the appeals referee on the theory that the discharges of the claimants operated to end the labor dispute with respect to the claimants. Petitioner petitioned this court for review of these decisions (case nos. 78-2064 and 78-2066).
The Division of Employment Security thereupon determined that claimants' unemployment was for misconduct connected with their work within the meaning of Section 443.06(1), Florida Statutes (1977). Claimants took administrative appeals. The petition in case nos. 78-2064 and 78-2066 *1256 were then temporarily suspended by this court. The appeals referee determined that Cantero had not been discharged for misconduct, but that Davila had been discharged for misconduct, finding that "[t]he facts presented in the instant case clearly show that the claimant was discharged from his employment because he participated in an illegal work stoppage contrary to the employer's known and enforced policies and procedures despite warnings." Davila had been issued three prior written warnings for similar misconduct. Moreover, he admitted being familiar with the no-strike clause of the union contract, having helped negotiate it.
The Commission reversed the decision of the appeals referee with respect to Davila, ruling that, in considering whether Davila's conduct constituted misconduct the referee had erred by failing to consider that Davila had acted "in concert with other workers engaged in a labor dispute." Petitioner separately petitioned for review of this decision to this court (case no 79-1653), and the three cases were consolidated.
The Commission erred in ruling that the claimants' discharges operated to end the labor dispute with respect to the claimants. This court held otherwise in Meyer v. Florida Industrial Commission, 117 So.2d 216 (Fla.2d DCA 1959), a case similar to the case at bar. There the employer discharged the petitioner for failing to report for work during a strike. The petitioner filed unfair labor practice charges with the National Labor Relations Board, and the trial examiner recommended that the employer be required to reinstate her with back pay. However, the employer refused to reinstate the petitioner even after the strike was called off and filed an appeal from the trial examiner's recommendation, which was still pending at the time of the hearing before the appeals referee of the Unemployment Compensation Division. This court held:
It is contended by the petitioner that ... although a labor dispute came into being on January 17, 1958, the "active progress" of the labor dispute terminated on September 9, 1958, when the Union called off its strike... .
We cannot agree with this contention. As we understand the term "labor dispute," it includes any controversy between employer and employee concerning wages, hours, working conditions or terms of employment... . When once a "labor dispute" begins, it remains in "active progress" until it is finally settled, terminated or completely abandoned... .
In the present case the "active progress" of the labor dispute did not terminate on September 9, 1958, when the Union called off the strike ... for this action by the Union merely amounted to an abandonment of certain activities which were being employed by the Union to force the employer to accede to the demands which were the basis of the claim out of which the labor dispute arose. It was not an abandonment of the labor dispute itself, because at the time the decision was made by the Union to call off the strike and release the petitioner for reemployment, the claim out of which the labor dispute arose was pending before the National Labor Relations Board, and, indeed, remained pending up through the date of final decision by the Florida Unemployment Compensation Board of Review... .
There is another contention made by petitioner that should be noticed. The petitioner concedes that a labor dispute came into being on January 17, 1958, and thereby disqualified her for benefits for so long as her unemployment was due to the labor dispute. She contends, however, that when she was discharged on January 22, 1958, for failure to come to work the employer-employee relationship theretofore existing was thereby severed, so that after discharge her unemployment was not due to the labor dispute but to the severance from employment.
We cannot agree with this contention. As we gather from the record, the petitioner was discharged and replaced because she joined the strike and refused to report for work. In these circumstances *1257 the employer-employee relationship was not absolutely terminated but was merely temporarily suspended until the settlement of the labor dispute or until petitioner secured bona fide permanent employment elsewhere. The petitioner has not shown that she secured other permanent employment, and the fact that, through her union, she diligently pursued her claim for reinstatement with her employer together with back pay, is evidence that she did not consider herself as a permanently discharged employee but rather as a "striking employee" entitled to reinstatement to her former position in the event her unfair labor practice charges were finally sustained by the National Labor Relations Board.
Id. at 219-220.
In the instant case, the active progress of the labor dispute did not terminate when the striking employees agreed to return to work because the employees did not abandon the claims which precipitated the strike, but agreed to return to work only upon appellant's accession to their demand that meetings be held to consider their grievances. Similarly, the employer-employee relationship between appellants and the claimants here was not permanently terminated, since the claimants, through their union, sought reinstatement, and the parties agreed that this issue would be settled by arbitration, which had apparently not been concluded at the time of the hearing before the appeals referee. See also Butcher v. Florida Industrial Commission, 231 So.2d 47 (Fla. 3d DCA 1970), cert. denied, 400 U.S. 992, 91 S.Ct. 459, 27 L.Ed.2d 440 (1971).
Respondents rely on numerous cases from other jurisdictions to support their contention that the labor dispute provision is not applicable to discharged workers. These cases are not on point, for in none of them were the employees actively seeking reinstatement.
The Commission further erred in reversing the appeals referee's finding that claimant Davila was discharged for "misconduct connected with his work," as defined in Section 443.06(9), Florida Statutes (1977). Regardless of whether other jurisdictions may choose to exclude participation in a peaceful, albeit unlawful, strike as a basis for denying unemployment compensation benefits, e.g., Linski v. Appeal Board, 358 Mich. 239, 99 N.W.2d 582 (1959); In re Heitzenrater, 19 N.Y.2d 1, 277 N.Y.S.2d 633, 224 N.E.2d 72 (1966), nothing in Florida or federal law compels this court to do so.
In NLRB v. Fansteel Metallurgical Corp., 306 U.S. 240, 59 S.Ct. 490, 83 L.Ed. 627 (1939), the United States Supreme Court made clear that protected activities do not include unlawful strikes:
We think that the true purpose of Congress is reasonably clear. Congress was intent upon the protection of the right of employees to self-organization and to the selection of representatives of their own choosing for collective bargaining without restraint or coercion. National Labor Relations Bd. v. Jones & L. Steel Corp., supra (301 U.S. p. 33, 57 S.Ct. 615, 81 L.Ed. 909, 108 A.L.R. 1352). To assure that protection, the employer is not permitted to discharge his employees because of union activity or agitation for collective bargaining. Associated Press v. National Labor Relations Bd., 301 U.S. 103, 57 S.Ct. 650, 81 L.Ed. 953, supra. The conduct thus protected is lawful conduct. Congress also recognized the right to strike,-that the employees could lawfully cease work at their own volition because of the failure of the employer to meet their demands. Section 13 provides that nothing in the Act "shall be construed so as to interfere with or impede or diminish in any way the right to strike." But this recognition of "the right to strike" plainly contemplates a lawful strike,-the exercise of the unquestioned right to quit work.
306 U.S. at 255-256, 59 S.Ct. at 496, 83 L.Ed. at 635 (emphasis added).
In International Union, U.A.W. v. Wisconsin Employment Relations Board, 336 U.S. 245, 69 S.Ct. 516, 93 L.Ed. 651 (1949), overruled on other grounds, 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976), the court added:

*1258 As to the right to strike, however, this Court, quoting the language of § 13, has said, 306 U.S. 240, 256, 59 S.Ct. 490 [496, 83 L.Ed. 627, 635,], 123 A.L.R. 599, "But this recognition of `the right to strike' plainly contemplates a lawful strike,-the exercise of the unquestioned right to quit work," and it did not operate to legalize ... a strike ... in violation of a contract made pursuant thereto.

336 U.S. at 259-260, 69 S.Ct. at 524, 93 L.Ed. at 666 (emphasis added).
Settlement of labor disputes by arbitration rather than by strike is the underlying principle of federal labor law. As the United States Supreme Court has stated:
[A] strike to settle a dispute which a collective bargaining agreement provides shall be settled exclusively and finally by compulsory arbitration constitutes a violation of the agreement... . To hold otherwise would obviously do violence to accepted principles of traditional contract law. Even more in point, a contrary view would be completely at odds with the basic policy of national labor legislation to promote the arbitral process as a substitute for economic warfare.
Local 174, Teamsters v. Lucas Flour Co., 369 U.S. 95 at 105, 82 S.Ct. 571 at 577, 7 L.Ed.2d 593 at 600 (1962) (emphasis added).
At least one state court has found that employees who were discharged for striking in the presence of a union contract which provided that all disputes be settled by arbitration were discharged for misconduct under the state unemployment compensation law. Weimer v. Unemployment Compensation Board of Review, 176 Pa.Super. 348, 107 A.2d 607 (1954). There the mere provision for arbitration as the exclusive means of dispute resolution was held to imply a no-strike promise, the breach of which constituted misconduct. See also Bogue Electric Co. v. Board of Review, 21 N.J. 431, 122 A.2d 615 at 618 (1956), where the contract contained an express no-strike clause.
Furthermore, the Third District, in Butcher v. Florida Industrial Commission, supra, indicated that, at least where the striking employees had been directed to cease their unlawful strike and return to work by a court order, their discharge for refusing to do so would not operate to entitle them to unemployment compensation, citing Section 443.06(1), which disqualifies an individual for benefits if he has voluntarily left his employment without good cause attributable to his employer or has been discharged for misconduct connected with his work.
We cannot uphold an award of unemployment compensation benefits to an employee who suddenly decides to walk off the job, leaving his employer holding the proverbial bag, when he does so of his own free will in intentional violation of a specific no-strike clause in the collective bargaining agreement between his union and his employer.
We do not hold, however, that an employee's mere participation in an unlawful strike always constitutes misconduct as a matter of law. That issue is not before us. The offending employee may be unaware that the strike is unlawful or may participate out of fear of retaliation from other union members should he cross the picket line. However, the appeals referee made no such findings here; in fact, he affirmatively found that claimant Davila was well aware of the no-strike clause of his union's contract with appellant and had received no less than three prior warnings for similar misconduct. The referee's finding that Davila was discharged for misconduct was supported by competent, substantial evidence. The Commission was therefore required to uphold the referee's decision and erred in reversing his finding. Board of County Commissioners v. Florida Department of Commerce, Division of Employment Security, 370 So.2d 1209 (Fla.2d DCA 1979); C.F. Industries, Inc. v. Long, 364 So.2d 864 (Fla. 2d DCA 1978).
Accordingly, the decisions of the Commission in all three of these consolidated cases are REVERSED.
OTT and RYDER, JJ., concur.
NOTES
[1] We appreciate the additional light shed on the issues in this case by Associated Industries of Florida as amicus curiae.