MR. JUSTICE GULBRANDSON
delivered the Opinion *2 of the Court.
This case comes on appeal from an order of the District Court of the First Judicial District, Lewis and Clark County, reversing a decision of the Board of Labor Appeals which had granted twenty-four members of the Professional Air Traffic Controllers’ Organization (PATCO) unemployment benefits. We affirm.
The terms of the PATCO members’ employment were governed by a nation-wide collective bargaining agreement between PATCO and the Federal Aviation Administration (FAA). After the collective bargaining agreement expired in March, 1981, negotiations concerning a new contract ensued between PATCO and the FAA, and on June 22,1981, a tentative agreement was negotiated. However, PATCO members did not ratify the agreement and bargaining for a new labor contract began again. When an agreement could not be reached, PATCO members withheld their services from employment beginning August 3, 1981.
All members of PATCO, at the time they were hired by the FAA, had signed affidavits that generally provided as follows: That the member had not participated in any strike against the government of the United States or any agency thereof, and would not so participate while an employee of the government of the United States or any agency thereof.
Various members of PATCO were warned that they should not strike or withhold their services, and a restraining order was issued against PATCO personnel in Washington D.C. In addition, the President of the United States ordered, in a televised statement, that the PATCO members should return to work within forty-eight hours or they would be subject to discharge. On August 3, 1981, the chief air traffic control operators at Billings, Great Falls and Helena called the PATCO members and requested they report for work as scheduled. On August 4, 1981, the Regional Office of the FAA in Denver, Colorado, sent each Montana employee a telegram and directed them to return *3 to work. Shortly thereafter, all members of PATCO who withheld their services were terminated from employment with the FAA.
Subsequent to their termination from employment, twenty-four Montana members of PATCO sought state unemployment benefits. On December 2, 1981, certain appeals referees sustained the determinations of various administrative deputies who had found the PATCO members were disqualified to receive benefits under the Montana Unemployment Insurance Act (the Act) because they were discharged for misconduct connected with their work. Specifically, the appeals referees found that each PATCO member was discharged by the FAA for violating 5 U.S.C.A. Section 7311 (1980) and 18 U.S.C.A. Section 1918 (1970) and concluded that the PATCO members were disqualified from unemployment compensation under Section 39-51-2303, MCA, (discharge due to misconduct). Thereafter, the PATCO members appealed the referees’ decision to the Board of Labor Appeals (the Board).
On February 3, 1982, the Board reversed the decision of the appeals referees and granted the PATCO members unemployment benefits. Relying on Continental Oil Co. v Board of Labor Appeals (1978), 178 Mont. 143, 582 P.2d 1236, the Board found that since the PATCO members’ strike was part of an overall labor dispute they left their jobs because of a labor dispute and were not discharged for misconduct. The Board stated that “[t]he fact that the strike was in violation of Federal law does not terminate the strike itself from the flow of the other events in this dispute such as a ‘wildcat’ strike in the private sector would violate a ‘no strike’ labor agreement and civil injunction relief to the employer.” The Board concluded that Section 39-51-2305, MCA, (disqualification when unemployment due to stoppage of work), rather than Section 39-51-2303, MCA, (discharge due to misconduct), was the proper statutory provision under which to consider the issue of the PATCO members’ eligibility for unemployment benefits.
*4 On March 19, 1983, the FAA appealed the decision of the Board to the District Court. On September 8, 1983, the District Court reversed the decision of the Board and found that the PATCO members were disqualified from receiving unemployment compensation because they had been discharged for misconduct. Noting the PATCO strike was in violation of federal law, the District Court rejected the Board’s interpretation and application of Continental Oil, supra, since that case did not involve an illegal strike.
From the District Court’s decision reversing the Board, the Department of Labor and Industry and the PATCO members appeal to this Court.
The two statutory provisions pertinent to this appeal are as follows:
“39-51-2303. Disqualification for discharge due to misconduct. An individual shall be disqualified for benefits if he has been discharged:
“(1) for misconduct connected with his work or affecting his employment until an individual has performed services, other than self-employment for which remuneration is received equal to or in excess of eight times his weekly benefit amount subsequent to the week in which the act causing the disqualification occurred.
“(2) for gross misconduct connected with his work or committed on the employer’s premises, as determined by the department, for a period of 12 months.
<<
“39-51-2305. Disqualification when unemployment due to stoppage of work. (1) Effective April 1, 1977, an individual shall be disqualified for benefits for any week with respect to which the department finds that his total unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed, . . .”
The definition of misconduct generally accepted in most jurisdictions and adopted by this Court in Gaunce v. Board of Labor Appeals (1974), 164 Mont. 445, 448, 524 P.2d *5 1108, 1110, was set forth in Boynton Cab Co., v. Neubeck (1941), 237 Wis. 249, 296 N.W. 636. In Boynton Cab Co., the court held that the term “misconduct” referred to conduct evincing such a willful or wanton disregard for an employer’s interest as is found in the deliberate violation or disregard of standards of behavior which the employer has the right to expect of his employees or in negligence of such a degree or recurrence as to manifest equal culpability, wrongful intent, or evil design.
Appellants rely on Claim, of Heitzenrater (1966), 277 N.Y.S.2d 633, 19 N.Y.2d 1, 224 N.E.2d 72, in arguing that the PATCO members’ strike did not constitute misconduct as defined in Boynton Cab Co. and Gaunce. In Claim of Heitzenrater, the New York court held that employees who participated in a strike in violation of the no-strike clause of a private contractual agreement were not guilty of misconduct and were therefore entitled to receive compensation under the strike-benefit provisions of the statute. The New York court initially noted that the mere existence of a strike or other industrial controversy does not necessarily preclude a finding of misconduct. However, the court stated that in disputes arising out of private contractual agreements, a finding of misconduct would require the resolution of factual issues as well as complicated questions of labor law, and that such matters “are best left to agencies especially qualified to deal with them, namely the Federal and State Labor Boards and labor arbitrators,” rather than the individuals administering the unemployment compensation laws. Claim of Heitzenrater, supra, 19 N.Y.2d at 7, 224 N.E.2d at 75-76.
However, the New York court subsequently held that in situations where the Legislature has specifically prohibited strikes or other concerted activity, an employee’s violation of that proscription constitutes misconduct as a matter of law. Rodriguez v. Presbyterian Hospital (1973), 347 N.Y.S.2d 43, 46, 32 N.Y.2d 577, 582, 300 N.E.2d 418, 420. In Rodriguez, a hospital employee participated in a strike that had *6 been expressly declared unlawful by statute because of the need to protect the public from the disruption of essential services in the area of health and hospital administration. The Rodriguez court noted that the traditional reluctance of the legislature to intervene in the realm of employment relations was overridden in this case by a compelling need to ensure the public safety in the critical area of health care. Given this important legislative purpose, the Rodriguez court held that violation of the statutory mandate prohibiting strikes amounted to “legislatively defined” misconduct. Rodriguez, supra, 347 N.Y.S.2d at 45, 32 N.Y.2d at 582, 300 N.E.2d at 419. Unlike violations of a private collective bargaining agreement, the legislation prohibiting strikes involved no complex issues of labor law because “the Legislature itself resolved all such issues by explicitly proscribing and expressly stamping as unlawful strikes and work stoppages by . . . public employees . . .” Rodriguez, supra, 32 N.Y.2d at 582, 300 N.E.2d at 420. The Rodriguez court concluded that the actions of an employee in violating the statutory prohibition against striking fell squarely within the misconduct provisions of the New York unemployment compensation statutory scheme. Rodriguez, supra, 347 N.Y.S.2d at 45, 32 N.Y.2d at 582-583, 300 N.E.2d at 420.
In the case at bar, this Court must consider the same issue as was presented in Rodriguez, specifically, whether participation in an unlawful strike constitutes misconduct as a matter of law. The facts reveal that a strike occurred which is unlawful according to the provisions of 5 U.S.C.A. Section 7311 (1980) and 18 U.S.C.A. Section 1918 (1970).
In Ranone v. Board of Review (1984), 474 A.2d 748, 116 LRRM 2134, 2136-37, the Rhode Island court considered whether PATCO members, discharged from federal employment for engaging in the same illegal strike of August 3, 1981, were ineligible for unemployment compensation. The Rhode Island court stated:
“We find persuasive the reasoning of the Rodriguez court *7 in holding that the misconduct provision disqualifies an employee from benefits when the unemployment resulted because of an unlawful strike. Here, the federal air traffic controllers acted in violation of the congressional mandate that expressly prohibits strikes by federal employees. 5 U.S.C.A. Section 7311. That statutory prohibition and the criminal sanctions provided pursuant thereto evince an unequivocal congressional intent to prevent the disruption of public services in order to ‘ensure that the machinery of the Federal Government continues to function at all times without interference.’ United Federation of Postal Clerks v. Blount, 325 F.Supp. 879, 884, 76 LRRM 2932 (D.D.C. 1971).”
We agree with the Rhode Island court’s application of Rodriguez and hold that the misconduct provision of Montana’s Unemployment Insurance Act applies to the PATCO strike and disqualifies the PATCO members from benefits because the unemployment resulted from an unlawful strike. The PATCO members engaged in conduct which was, at least, in deliberate disregard of the employer’s interests and of the standards of behavior the employer had the right to expect of its employees. Gaunce, supra, 164 Mont. at 448, 524 P.2d 1108.
We therefore hold that the actions of the PATCO members in engaging in a prohibited strike constituted misconduct under Montana law and the District Court did not err in holding that the PATCO members were disqualified for unemployment, benefits under Section 39-51-2303, MCA.
Affirmed.
MR. CHIEF JUSTICE HASWELL, and MR. JUSTICES HARRISON and WEBER concur.