■ In the Matter of the Claim of CAROLE P. BRAUNER, Respondent. PATCHOGUE NURSING CENTER, Appellant; THOMAS F. HARTNETT, as Commissioner of Labor, Respondent.—Mikoll, J. Appeal from a decision of the Unemployment Insurance Appeal Board, filed January 25, 1989, which ruled that claimant was entitled to receive unemployment insurance benefits.

Claimant, a nurse at Patchogue Nursing Center (hereinafter PNC) in Suffolk County, was terminated for insubordination for failing to comply with her supervisor's orders and PNC's disciplinary procedures, and on the further ground that her behavior jeopardized the health, safety and welfare of PNC's patients. In addition to applying for unemployment insurance benefits, claimant also initiated a grievance before the American Arbitration Association in accordance with PNC's collective bargaining agreement.

Initially, the Commissioner of Labor found that claimant was disqualified from receiving benefits because she lost her employment due to misconduct. The determination was overruled by an Administrative Law Judge (hereinafter ALJ) on November 24, 1987. On appeal to the Unemployment Insurance Appeal Board (hereinafter the Board) the case was remanded to reconstruct the testimony of certain witnesses which had been lost. Meanwhile, a decision was rendered in the arbitration matter on October 13, 1988 which found that PNC had discharged claimant for cause. The ALJ accepted the arbitration decision as an exhibit in its November 7, 1988 proceeding to reconstruct the witnesses' testimony. The Board accepted the decision as an exhibit but held that claimant's conduct did not constitute misconduct. The Board found that

---

claimant had been suspended for refusing to sign the warning of deficiencies resulting from an administrative inspection of the floor she supervised as a nurse in charge and presented to her on Friday, March 20, 1987, as she was leaving the premises one hour after her regular work ended. Claimant refused to sign the document after work hours, indicating that she wanted time to read and respond to the noted deficiencies and would do so on the following Monday. The Board found that her discharge occurred due to her instigation of a work stoppage at PNC on Saturday, March 21, 1987, at which time she was informed that she had been suspended the day before and would not be permitted to work. Claimant was ultimately evicted by police after refusing to leave voluntarily. Claimant encouraged her fellow workers to support her and they walked off the job for 45 minutes, leaving their charges unattended.

As to the incitement of a work stoppage, the Board, citing *Matter of Heitzenrater (Hooker Chem. Corp.—Catherwood)* (19 NY2d 1), found that although the provisions in the union contract provided for no striking, claimant's actions were not acts of misconduct. The Board also concluded that claimant's refusal to leave the building was not an act of misconduct. Although finding her actions to be in poor judgment, the Board found amelioration thereof in the fact that claimant did not realize that she could be suspended for refusing to sign the warning notice on March 20, 1987 and, not having been given a copy thereof the following day, March 21, 1987, her actions in refusing to leave the facility and what transpired thereafter did not constitute misconduct.

PNC now challenges the finding of the Board on the ground that the Board failed to accord collateral estoppel effect to the arbitration decision which was handed down on October 13, 1988, prior to the conclusion of the Board hearing. The arbitration decision was accepted as an exhibit in the unemployment insurance proceeding. The Board's decision was filed on January 25, 1989 but did not grant preclusive effect to the arbitration decision's factual determination that claimant's actions constituted misconduct.

In the arbitration matter, it was found that (1) claimant persistently refused to sign the warning notice, (2) claimant was aware of PNC's policy to suspend employees for such refusal, (3) this policy was common knowledge at PNC, and (4) claimant left the premises despite her supervisor's order to remain while PNC's operator was being summoned. It also

found claimant's stance to be an act of defiance to her superiors and inexplicable under the circumstances.

As to the events of March 21, 1987, the day of the work stoppage, the arbitration decision found that on that day claimant rallied other employees in the parking lot to support her before entering the building, she willfully refused to leave the work place until escorted out by police and she walked a picket line. The decision also determined that as a result of her actions, a work stoppage occurred wherein the health care professionals violated their obligation to the elderly and helpless patients in their care and that none of claimant's coemployees could enunciate a reason for their motivation in walking out in her support.

Two questions present themselves herein: (1) whether the Board erred as a matter of law in refusing to give preclusive effect to the arbitration decision's factual findings, which contradicted those made by the Board, and (2) if collateral estoppel does not apply, whether substantial evidence existed to support the Board's finding.

We concur with PNC's contention that the Board erred in failing to accord collateral estoppel effect to the arbitration decision. The arbitration award became final on October 13, 1988. Claimant had fully participated in the arbitration proceeding and had full opportunity to litigate the issue of whether she was discharged for cause. Following *Ryan v New York Tel. Co.* (62 NY2d 494) and *Matter of Ranni (Ross)* (58 NY2d 715), a plethora of cases have applied collateral estoppel to administrative hearings with respect to arbitration awards *(see, e.g., Matter of Guimarales [New York City Bd. of Educ.— Roberts]*, 68 NY2d 989; *Matter of Douglas [Hartnett]*, 143 AD2d 458). We do not deem the time of commencement of proceedings as relevant to the issue of the applicability of collateral estoppel principles *(see, Clemens v Apple*, 102 AD2d 236, *affd* 65 NY2d 746). Nor do we find a determination by the ALJ in claimant's favor a final determination as to the issue of misconduct.

Labor Law § 623 (1) provides as follows: "A decision of a referee, if not appealed from, shall be final on all questions of fact and law. A decision of the appeal board shall be final on all questions of fact and, unless appealed from, shall be final on all questions of law." Here, the ALJ's finding was on appeal when the arbitration award was made. We have previously held that the final factfinder in the administrative process is the Board, not the ALJ *(see, Matter of O'Leary*

*[Roberts],* 93 AD2d 915). We note in passing that the Board in the instant matter did not adopt the ALJ's findings but made its own findings of fact. We hold that a final factual determination had not yet been made by the Board when the arbitration decision was handed down. We, therefore, conclude that collateral estoppel should have been accorded to the arbitration decision's factual findings. Given this conclusion, it is not necessary to address the question of whether the Board's decision was supported by substantial evidence.

Decision reversed, without costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent with this court's decision. Mahoney, P. J., Weiss, Mikoll, Levine and Harvey, JJ., concur.