14 N.J. Super. 359 (1951)
82 A.2d 444
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RUDIE MATCHOK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 11, 1951.
Decided June 26, 1951.
*360 Before Judges EASTWOOD, BIGELOW and FREUND.
Mr. Archibald Kreiger argued the cause for the defendant-appellant (Mr. A. Leon Kohlreiter, attorney).
Mr. J. Bernard Saltzman argued the cause for the plaintiff-respondent.
The opinion of the court was delivered by FREUND, J.S.C.
The defendant was convicted by the Municipal Court of the City of Clifton, New Jersey, of operating a motor vehicle while under the influence of intoxicating liquor, in violation of R.S. 39:4-50, and sentenced as a second offender. On appeal, there was a trial de novo before the Passaic County Court and he was again found guilty. He now appeals to this court, arguing that the State failed to establish the truth of the charge beyond a reasonable doubt and hence the conviction was contrary to the weight of the evidence.
On this appeal, only the judgment on the trial de novo is under review, State v. Hunter, 12 N.J. Super. 128 (App. Div. 1951), but the factual issue both before the Municipal Court and the County Court was the same. It is not necessary for this court to weigh the evidence, but merely to determine whether the evidence supports the conviction. State v. Row, 116 N.J.L. 48 (Sup. Ct. 1935), affirmed 122 N.J.L. 466 (E. & A. 1939); State v. Myers, 136 N.J.L. 288, (Sup. Ct. 1947); State v. Nolan, 1 N.J. Super. 280 (App. Div. 1949). The burden of establishing the guilt of the defendant beyond a reasonable doubt was upon the State. The test is not whether our minds, as reviewing judges, are *361 satisfied beyond a reasonable doubt of the guilt of the accused, but rather whether the State's evidence has proved his guilt beyond a reasonable doubt. If not, then a conviction does a manifest wrong, according to our system of jurisprudence. Kohl v. State, 59 N.J.L. 445 (E. & A. 1896). State v. Karpowitz, 98 N.J.L. 546 (E. & A. 1922); State v. Woodworth, 121 N.J.L. 78 (Sup. Ct. 1938); State v. Linarducci, 122 N.J.L. 137 (Sup. Ct. 1939); State v. Cox, 128 N.J.L. 108 (E. & A. 1941); State v. Monia, 132 N.J.L. 91 (Sup. Ct. 1944).
The defendant testified that on the morning of August 24, 1950, upon his return from work he ate a breakfast of bacon and eggs, and then drank two bottles of beer. Around noontime of the same day, he drove to Little Ferry to visit his friend, Henches. There he drank another glass of beer. About 2:30, the defendant, accompanied by Henches, started to drive home to Bloomfield. He testified that while he was driving along Route 6, his automobile was struck by a car which swerved in front of him, with the result that his car jumped the center safety isle and collided head-on with an automobile owned and operated by Nicholas Scatuorchio, whose wife, a passenger, died as a result of the accident. The defendant suffered a fractured clavicle, three fractured ribs, the loss of two teeth, a deep gash above the right eye, multiple lacerations and bruises, and shock. He testified that when his car jumped the safety isle, his head hit the steering wheel and he became unconscious. Both he and Henches were lifted out of the car and taken by ambulance to a hospital, where the defendant remained for five days.
The accident occurred about 3 P.M. Upon admission to the hospital, the defendant was placed in an emergency room where he remained for an hour or more, during which time at least six doctors were in attendance. Of these, only two testified; Dr. Offenkranz for the prosecutor and Dr. Rancaniello for the defendant. Dr. Offenkranz, in charge of the hospital's clinical laboratory, testified that in the six years he was in military service much of his experience concerned *362 the examination of soldiers for intoxication, "running a laboratory * * * making diagnoses of alcoholism, intoxication, alcoholic effects on soldiers * * * of the blood levels for affect in these people." He stated that the defendant had a strong alcoholic odor to his breath and that his speech was slurred, incoherent and thick; that he believed him under the influence of intoxicating liquor and not fit to drive a motor vehicle. He himself did not make any tests on the defendant, but asked an interne to test his reflexes. The interne who made the test was not called as a witness, and Dr. Offenkranz merely stated the tests showed sluggish reflexes. Although Dr. Offenkranz was present in the emergency room while the defendant's lacerations were being sutured, he testified he did not know the extent of defendant's injuries, nor that the last rites of the church had been administered to him. However, he knew a fatality occurred as a result of the accident and admitted he had feelings against the defendant.
Testimony as to the defendant's alcoholic breath was also given by two police officers and a detective. To the contrary, the police officer who lifted the defendant out of his car testified there was no odor of alcohol. Moreover, Dr. Rancaniello who sutured the defendant's forehead and neck, testified he did not smell alcohol on the defendant's breath.
Thus it appears that the defendant was convicted on testimony that his breath smelled of liquor. Admittedly, Dr. Offenkranz was experienced in giving tests for intoxication and analyzing the results. In the hospital, facilities for making such tests were assuredly available. Yet none was given other than a simple reflex test, the results of which were nowhere noted. Indeed, there is absolutely no reference in the hospital record as to whether or not the defendant was under the influence of liquor or whether any tests to determine intoxication were made. Further, in view of modern scientific advances and such known methods as the Harger Breath Test, the Drunkometer, chemical analyses of blood, urine and other body substances, P.L. 1951, c. 23, sec. 30, it *363 is difficult to reconcile Dr. Offenkranz' expert status with his testimony that he knew of only four basic tests for intoxication: speech, gait, reflexes and contact with environment.
It is evident the defendant had been in a serious accident, in which he sustained shock and painful injuries requiring hospitalization. Indeed, the injury to his head was sufficiently severe to require an X-ray for possible skull fracture. It would seem that such injuries alone might have retarded his physical reflexes and mental reactions, rendering it well-nigh impossible merely by observation to determine whether his condition was the result of injuries, intoxication or both.
Accordingly, in our opinion, the State did not establish the guilt of the defendant beyond a reasonable doubt. The burden being upon the State, any reasonable doubt should be resolved in favor of the defendant. The judgment of conviction is reversed.