73 N.J. Super. 421 (1962)
180 A.2d 175
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN W. IMMERMAN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 23, 1961.
Decided January 3, 1962.
*422 Before Judges PRICE, SULLIVAN and LEONARD.
Mr. Jerome S. Lieb argued the cause for appellant (Messrs. Harkavy and Lieb, attorneys).
Mr. Peter Murray, Assistant Prosecutor, argued the cause for respondent (Mr. Brendan T. Byrne, County Prosecutor of Essex County, attorney).
The opinion of the court was delivered by SULLIVAN, J.A.D.
Defendant appeals from a conviction of a charge of operating a motor vehicle while under the influence of intoxicating liquor contrary to N.J.S.A. 39:4-50.
Defendant was apprehended in the Borough of Caldwell by James Brown, Jr., a police officer of the borough, who observed defendant driving his station wagon in an erratic manner. The officer stopped defendant and, after questioning him, brought him to police headquarters. There it was ascertained that defendant had been arrested for drunken driving in the borough five days previously. At headquarters, defendant refused to submit to a drunkometer test. He also refused to be examined by Dr. Sanford, the physician who had been called by Sergeant Sullivan, the *423 desk officer on duty at police headquarters. Officer Frederickson was also in headquarters at the time. After Dr. Sanford left, defendant requested that Dr. Paul, a physician and a personal friend of defendant's, be called. This was done; Dr. Paul appeared at headquarters; posted $230 bail for defendant and drove defendant home.
The appeal turns on the competency of opinion evidence given by two of the police officers at the trial de novo in the County Court.
The record shows that Officer Brown, the arresting officer, after testifying to defendant's manner of driving and his conduct and appearance at the time of his arrest and thereafter, gave an opinion that defendant was under the influence of an alcoholic beverage and was unfit to operate a motor vehicle. On cross-examination he said that his opinion of defendant's condition was "affected" by defendant's refusal to be examined by Dr. Sanford.
Officer Frederickson who saw defendant at police headquarters also testified that in his opinion the defendant was under the influence of an alcoholic beverage and unfit to operate a vehicle. On cross-examination he stated that, in arriving at his opinion, he took into consideration the fact that defendant refused to be examined by Dr. Sanford.
Officer Sullivan, the desk officer at police headquarters, testified that in his opinion defendant was under the influence of an alcoholic beverage and unfit to drive a motor vehicle. On cross-examination he said that his opinion did not take into consideration the fact that defendant had refused to submit to a medical examination.
Dr. Sanford testified to seeing the defendant at police headquarters but that defendant had refused to be examined. On cross-examination Dr. Sanford said that defendant appeared to be composed, spoke in a coherent manner and was not boisterous. From his observation of defendant, Dr. Sanford was unable to formulate an opinion as to whether or not defendant was under the influence of liquor and unfit to drive a motor vehicle. The State concedes that *424 "there is no question but that defendant was coherent, composed, understanding and understandable."
Defendant testified in his own behalf and explained his manner of driving and his appearance at the time of his arrest.
Dr. Paul appeared as a witness for defendant. He testified to going to police headquarters, posting bail and driving defendant home. He said that he observed defendant carefully because Sergeant Sullivan had told him he would be responsible for defendant if he posted bail. Dr. Paul's opinion was that at the time he saw him defendant was not intoxicated. In answer to a hypothetical question the doctor also gave an opinion that the defendant was not under the influence of liquor and unfit to drive at the time of his arrest.
At the conclusion of the proofs defendant's attorney moved to strike the opinions of Officers Brown and Frederickson that defendant was under the influence of an intoxicating liquor and unfit to drive a motor vehicle on the grounds that each had admitted on cross-examination that one of the factors considered in arriving at such opinions was that defendant had refused to submit to a medical examination. The motion was denied.
As has been noted, the trial court found defendant guilty. The court stated that it was greatly impressed with the testimony of the three police officers and was not impressed by Dr. Paul's testimony.
On this appeal the State concedes that defendant had an absolute right to refuse to take a drunkometer test and that no adverse inference could be drawn therefrom. However, the State contends that defendant had no right to refuse to submit to an examination by Dr. Sanford and that his refusal could be considered by the police officers and the trial court if they so wished. In support of this latter argument, the State refers to N.J.S. 2A:84A-19 which provides as follows:

*425 "2A:84A-19. Self-incrimination: exceptions

Rule 25.
Subject to Rule 37, every natural person has a right to refuse to disclose in an action or to a police officer or other official any matter that will incriminate him or expose him to a penalty or a forfeiture of his estate, except that under this rule:
(a) no person has the privilege to refuse to submit to examination for the purpose of discovering or recording his corporal features and other identifying characteristics or his physical or mental condition; * * *."
It is to be noted that while the statute provides that no person has the privilege to refuse to submit to examination for the purpose of discovering his physical or mental condition, there is no provision that an adverse inference may be drawn from a refusal to so submit. Cf. N.J.S. 2A:84A-17.
Moreover, in the instant case there is nothing in the record to indicate the kind of examination Dr. Sanford proposed to conduct. If it were to have included a chemical analysis of a bodily substance of defendant in order to determine the percentage of alcohol in his blood, it is undisputed that such analysis, or specimen necessary thereto, could only be made or taken on defendant's express consent or at his request, and that no adverse inference could be drawn from defendant's refusal to consent. N.J.S.A. 39:4-50.1; State v. Ingram, 67 N.J. Super. 21 (Cty. Ct. 1961).
Therefore, Officers Brown and Frederickson, in forming an opinion as to defendant's intoxication, should not have taken into consideration the defendant's refusal to be examined by Dr. Sanford. To what extent that consideration affected the opinion reached we do not know. The result, however, is that the opinions were based in part, at least, on an improper consideration and should have been stricken on defendant's motion.
These opinions were vital to the State's case because, without them, all that was left was the evidence of defendant's erratic driving, his conduct and appearance at the *426 time and the opinion of Officer Sullivan, the desk sergeant at police headquarters. Against this there was defendant's own explanation of his driving and appearance; the inability of Dr. Sanford to say that defendant was under the influence of liquor and unfit to drive a motor vehicle although he saw defendant at police headquarters and had the same opportunity to observe him as did Officers Frederickson and Sullivan; the positive testimony of Dr. Paul that defendant was not intoxicated, and the concession by the State that "there is no question but that defendant was coherent, composed, understanding and understandable."
The conclusion is that while unquestionably there was evidence of intoxication, such evidence does not have the weight or degree of certainty sufficient to prove defendant guilty of the statutory violation beyond a reasonable doubt. State v. Matchok, 14 N.J. Super. 359 (App. Div. 1951).
The State argues that the officers' consideration of defendant's refusal was not prejudicial to defendant because the trial court "was clearly of the opinion that such refusal could not be taken into account in determining defendant's physical condition." The suggestion is that in assessing the testimony of the two police officers the trial court screened their opinions and excluded therefrom any consideration of defendant's refusal to be examined by Dr. Sanford. This point is without merit. As has been stated we have no way of knowing to what extent the officers' opinions were affected by the improper consideration.
The judgment of conviction is reversed.