DANIEL COOPER, JAMES V. DIBACCO, PHILIP C. FIRL, CHARLES K. BLAND, JR., RONALD P. BARNARD, WILLIAM F. BOZIC, FREDDIE L. COOPER, ERNEST G. EBERT, DARVIN P. FRIEND, JOSEPH E. KIGHT, ROBERT L. KING, NORMAN R. KIGHT, FRANKLIN E. LITTEN, ROBERT L. MARTIN, RICHARD R. MOYERS, ROBERT ALLEN PORTER, RICHARD C. ROBINETTE, GERALD L. SANDERS, ROGER R. SIMMONS, EDWARD A. WHISNER, CARL R. WOLFE, LARRY S. RAINES, PERRY A. HARTMAN, STANLEY R. KISAMORE, ALONZO J. CARR, ROBERT M. SNYDER, WALTER D. WARD, ROY E. MARTIN, LEONARD D. CARR, LYNWOOD C. REEL, RONALD SHREVE, RAY E. CARR AND LEO R. KLOSTERMAN

*v.*

PHYLLIS J. RUTLEDGE, CLERK, CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA, THE BOARD OF REVIEW OF THE WEST VIRGINIA DEPARTMENT OF EMPLOYMENT SECURITY, NICHOLAS LAZARIS, COMMISSIONER OF THE WEST VIRGINIA DEPARTMENT OF EMPLOYMENT SECURITY, AND VIRGINIA ELECTRIC AND POWER COMPANY.

(No. 15119)

Decided February 11, 1982.

Robert F. Cohen, Jr., for petitioners.

Wallace, Ross & Gibson and Joseph A. Wallace, Elkins, Hunton & Williams, A. Neal Barkus and Paul Mirengoff for respondents.

MCGRAW, JUSTICE:

The petitioners appeal from a final order of the Circuit Court of Kanawha County entered November 10, 1980. The circuit court affirmed the ruling of the Board of Review of the West Virginia Department of Employment Security disqualifying the appellants from receiving unemployment compensation benefits for a period of six weeks on the ground that they were "discharged for misconduct" within the meaning of W. Va. Code §21A-6-3(2) (1981 Replacement Vol.). The appellants contend that the circuit court erred in concluding that their activities constituted misconduct and that they were disqualified from receiving benefits under the statute. We agree and we reverse the judgment of the circuit court.

All of the appellants in this case were employed by Virginia Electric and Power Company (hereinafter VEPCO) at the coal-fired electric generating facility it operates near Mt. Storm, West Virginia. On Friday, August 4, 1978, the station superintendent discharged two employees for submitting meal vouchers which he questioned. After work that day a meeting was held by other employees, all members of Local 2308 of the International Brotherhood of Electrical Workers, to discuss complaints about safety and employee policies. The employees decided to seek the help of their union and to have another meeting on Monday morning prior to going to work.

On Monday morning, August 7, 1978, most of the 188 day shift employees arrived prior to the normal 7:00 a.m.

starting time. After some discussion, the employees voted to go to work. During this time the station superintendent made several visits to the area where the workers were meeting. His last visit took place at approximately 6:50 a.m. According to witnesses, the plant superintendent told the union president and several others that if they were not at work by 7:00 a.m. they would be fired. The plant superintendent then started towards his car, stopped, turned around and, according to his own testimony, told several of the employees that "as far as I was concerned they have just lost their jobs." Three other witnesses testified that the superintendent said "you all are fired" or "you're all fired," which the plant supervisor denied. Thereafter the day shift employees did not go to work.

Picketing began about 10:00 a.m. the morning of August 7 and continued until the morning of August 10. During the picketing some logs and oil barrels were placed on the road. It appears uncontroverted from the testimony that these obstacles were positioned to slow traffic because a VEPCO vehicle had driven past the pickets very quickly. It also appears that there was no violence or intimidation during the three days of picketing and that the obstacles were removed without hesitation when a vehicle approached the plant. None of the supervisors had any trouble entering the facility.

On August 8, VEPCO obtained a temporary restraining order from the United States District Court in Elkins requiring the employees to cease and desist all picketing. On the same day VEPCO also sent a telegram to all of the employees informing them that they were suspended until VEPCO could conduct an investigatory interview with each employee. The workers stopped picketing on the morning of August 10.

Prior to permitting the day shift employees to return to work, VEPCO conducted interviews from August 16 through October 10, 1978. At the conclusion of each interview, each of the employees who desired to return to work signed a form admitting participation in or support for an "unauthorized work stoppage." Between Novem-

ber 7 and November 10, 1978, VEPCO discharged 40 of the 188 employees, including the 33 appellants in this action.

The events at VEPCO's Mt. Storm facility gave rise to two sets of claims for unemployment compensation. The first involved the claims of the 188 employees who claimed to have been fired on August 7, 1978 and participated in the picketing of the VEPCO facility. VEPCO disputed these claims on the ground that the claimants had been engaged in an unauthorized labor dispute and were therefore disqualified from receiving benefits for a period of six weeks under W. Va. Code § 21A-6-3(4) [1978]. In *Bible v. Virginia Electric & Power Company*, Civil Action No. AP-CA-79-20, the Circuit Court of Kanawha County upheld the judgment of the Board of Review dated February 2, 1979, that the claimants had been fired prior to the commencement of the picketing and were therefore eligible to receive unemployment compensation benefits from August 7, 1978 until they were rehired or their employment terminated. VEPCO's appeal from this decision was denied by this Court on February 3, 1981.

The second set of claims was filed by the appellants in this case seeking unemployment compensation benefits for the period following their discharge from employment in November 1978. The Deputy Commissioner initially determined that the appellants herein were disqualified for a six-week period because they had been "discharged for misconduct" within the meaning of W. Va. Code § 21A-6-3(2) [1978]. After a hearing held before a trial examiner, however, the facts were resolved in favor of the appellants, who were held to have been discharged but not for misconduct. After two trips up and down the administrative ladder, the case was finally resolved against the appellants by the Board of Review, which held that the appellants were discharged for misconduct arising from their activities between August 7 and August 10, 1978, and that they were for that reason disqualified from receiving unemployment compensation benefits under the provisions of W. Va. Code § 21A-6-3(2). The appellants appealed this decision to the Circuit Court

of Kanawha County which affirmed the ruling of the Board of Review. It is from this order that the appellants prosecute the instant appeal.

The single issue to be resolved in this case is whether the petitioners were guilty of "misconduct" within the meaning of W. Va. Code § 21A-6-3(2), and thus ineligible to receive benefits for six weeks following the termination of their employment. The statutory section defines misconduct as follows:

> Misconduct consisting of wilful destruction of his employer's property, assault upon the person of his employer or any employee of his employer, if such assault is committed at such individual's place of employment or in the course of employment; reporting to work in an intoxicated condition, or being intoxicated while at work; arson, theft, larceny, fraud or embezzlement in connection with his work; or any other gross misconduct; he shall be and remain disqualified for benefits until he has thereafter worked at least thirty days in covered employment: Provided, that for the purpose of this subdivision the words "any other gross misconduct" shall include, but not be limited to, any act or acts of misconduct where the individual has received prior written warning that termination of employment may result from such acts.

This Court has not had occasion to interpret the meaning of this statutory "misconduct" disqualification. Other jurisdictions which have considered the issue of the misconduct disqualification under their unemployment compensation statutes have formulated the following general rule:

> The term "misconduct" ... is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his

employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not deemed "misconduct" within the meaning of the statute.

*Hickenbottom v. District of Columbia Unemployment Compensation Board*, 273 A.2d 475, 477-78 (D.C. App. 1971); *Carter v. Michigan Employment Security Commission*, 364 Mich. 538, 541, 111 N.W.2d 817, 819 (1961); *Beaunit Mills, Inc. v. Board of Review*, 43 N.J. Super. 172, 183, 128 A.2d 20, 26 (1956); *Frumento v. Unemployment Compensation Board of Review*, 466 Pa. 81, 83-84, 351 A.2d 631, 632 (1976); 76 Am. Jur. 2d "Unemployment Compensation," § 52; *Boynton Cab Company v. Neubeck*, 237 Wis. 249, 256-7, 296 N.W. 636, 640 (1941).

The factual context of this case is rather unique. Few cases from other jurisdictions analyze the issue of disqualification from unemployment compensation benefits for "misconduct" where the employer fires the workers who then engage in picketing and related non-violent activities at the employer's plant. Two jurisdictions that have reached the issue are the District of Columbia and Indiana. In *Hickenbottom v. District of Columbia Unemployment Compensation Board, supra,* and *Youngstown Sheet and Tube Company v. Review Board*, 135 Ind. App. 461, 191 N.E.2d 32 (1963), it was held employees who engage in unauthorized demonstrations after being suspended or laid off are not guilty of "misconduct so as to disqualify them from receiving unemployment compensation benefits."

The reasoning of the courts in *Hickenbotton* and *Youngstown Sheet and Tube* was that the employer's action in suspending or laying off workers had sufficiently

severed the employer-employee relationship so that subsequent picketing could not constitute "misconduct in connection with his work," which the respective District of Columbia and Indiana statutes required for disqualification. 273 A.2d at 478; 191 N.E.2d at 35. As explained by the Indiana court,

> The word here used ('employees') has a definite, well established meaning, commonly known, and is applicable only to one who is *in the present service* of another *for pay* at a *particular time.* In its accepted usage, it does not embrace one who has at some time been, *but no longer is,* in the employment of another (Emphasis in original.) 135 Ind. App. at 468, 191 N.E.2d at 35, quoting from *Koch, Executor, et al, v. Wix, et al.,* 108 Ind. App. 20, 216, 25 N.E.2d 277, 279 (1940).

West Virginia Code § 21A-6-3(2) which, as a prerequisite to disqualification, requires that the employee be "discharged from his most recent work for misconduct" is essentially identical to the statutes relied on in *Hickenbottom* and *Youngstown Sheet and Tube, supra,* in its requirement of an employer-employee relationship at the time of the "misconduct." If there were no requirement that the "misconduct" occur in the course of the employer-employee relationship, the statutory phrase "discharged from his most recent work" would have no meaning. Since a mere disciplinary suspension constitutes a severance of the employer-employee relationship, in West Virginia unemployment compensation law, *Kisamore v. Rutledge,* ____ W.Va. ____, 276 S.E.2d 821 (1981), the firing or suspension of the appellants on August 7, 1978 must also constitute such a severance. Consequently we hold that employees who are fired and subsequently engage in demonstrations against their former employer are not guilty of misconduct within the meaning of W. Va. Code§ 21A-6-3(2) so as to be disqualified from receiving unemployment compensation benefits.

Even if this were not the case, we do not think that the activities of the appellants during the period of work

stoppage would constitute misconduct under the statute. In concluding that the appellants were guilty of misconduct, the circuit court cited the following activities: conducting patrols of the area, stopping vehicles and questioning the occupants and trying to prevent entry into the power plant. The recitation of these activities was based on testimony by one of VEPCO's witnesses who was not present during any of the picketing. The hearsay testimony of the employer's witness regarding the most serious of these charges—that the appellants attempted to prevent entry into the employer's facility—was contradicted by the testimony of the employees and of VEPCO's only witness who was present at the plant site. There was no evidence of any destruction of the employer's property nor of assaults on VEPCO employees. The only ground, under the provisions of the statute, viable for disqualifying the appellants from unemployment compensation benefits for six weeks would be "other gross misconduct."

*Claim of Heitzenrater*, 19 N.Y. 2d 1, 277 N.Y.S.2d 633, 224 N.E.2d 72 (1966), is sufficiently analogous to the present case to afford further guidance. In *Heitzenrater* some 600 workers went out on a three-day strike but subsequently returned to work at the urging of their international union. After the strike ended, the employer fired twenty-four of the employees on the ground that they violated the no-strike clause of their contract and as a result of apparent acts of leadership in the work stoppage. The New York court held that "mere participation in a strike, which may be in breach of a no-strike clause, or otherwise impermissible or proscribed, does not constitute 'misconduct.'" 224 N.E.2d at 75. *See also DeGrego v. Levine*, 39 N.Y.2d 180, 383 N.Y.S.2d 250, 347 N.E.2d 611 (1976). This Court finds the analysis of the court in *Heitzenrater* to be persuasive in the case at hand, and adopts its reasoning as its own. Counsel for the claimants in this action appears to be arguing for reinstatement as well as payment of the denied unemployment compensation funds. This reinstatement issue is not currently before this Court and will not be considered at this time. For some guidance on how this

Court might handle this type of claim *see Shanholtz v. Monongahela Power Company,* \_\_\_ W.Va. \_\_\_, 270 S.E.2d 178 (1980).

For the reasons stated above this case is remanded to the Circuit Court of Kanawha County with directions that it instruct the Board of Review to order payment of the unemployment compensation benefits to the claimants in this action.

> *Remanded with direction that claimants be paid.*