Marcus A. TOMPKINS

v.

**MAINE UNEMPLOYMENT INSURANCE COMMISSION, et al.**

Supreme Judicial Court of Maine.

Argued Jan. 10, 1985.

Decided Feb. 8, 1985.

Richard L. Rhoda (orally), Houlton, for plaintiff.

Barnes & Sylvester, Torrey A. Sylvester, Houlton, for Reid's Confectionery.

Leanne Robbin, Asst. Atty. Gen. (orally), Augusta, for Maine Unemployment Ins. Commission.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

WATHEN, Justice.

Marcus A. Tompkins, the plaintiff-employee, appeals from a judgment of the Superior Court (Aroostook County) affirming a decision of the Employment Security Commission (the "Commission").[1] The Commission decided that plaintiff was discharged from his employment with Reid's Confectionary Company ("Reid's") for misconduct connected with work within the meaning of 26 M.R.S.A. §§ 1043 (1974) and 1193(2) (Supp.1984–1985). An employee who has been discharged for misconduct connected with work is temporarily disqualified from receiving unemployment benefits. *See* 26 M.R.S.A. § 1193(2). Plaintiff contends that because he was a chronic alcoholic, his drinking was involuntary and therefore did not constitute misconduct connected with work. On the facts of this case, the finding of misconduct is not in error and we deny the appeal.

## I.

Plaintiff worked as a salesman and delivery truck driver for Reid's from 1947–1978. Plaintiff presented evidence that he was a chronic alcoholic who often drank during the work day. Robert Nagle acquired Reid's in May 1977. Mr. Nagle testified that when he bought the company he was unaware that plaintiff had a drinking problem. Mr. Nagle said that he first found out about plaintiff's drinking when plaintiff returned to work drunk on May 25, 1977. The next day, Mr. Nagle gave a written warning to plaintiff that a repeat violation would bring further disciplinary action. In March 1978, Mr. Nagle issued another written warning to plaintiff stating that Mr. Nagle had seen plaintiff drunk on the job and had received complaints from customers about plaintiff's behavior. Mr. Nagle warned that further drinking on the job would be cause for immediate dismissal.

In September and October of 1978, plaintiff was involved in an accident while on the job, made misdeliveries, and offended some of Reid's customers. As a result of those incidents, on November 8, 1978, Mr.

---

1. The Employment Security Commission is now entitled the Unemployment Insurance Commission. P.L.1983, c. 351, § 41.

Nagle fired plaintiff. Mr. Nagle testified that he feared for the safety of the company's equipment and for the lives of those on the road if plaintiff continued to work for Reid's. Plaintiff testified that after he was fired, he successfully took part in a 21 day treatment program for alcoholics.

On February 2, 1979, the Appeal Tribunal of the Commission affirmed the deputy's decision disqualifying plaintiff from receiving unemployment benefits. The Commission affirmed the decision of the Appeal Tribunal. Plaintiff then appealed to the Superior Court which remanded the case to the Commission for findings in conformance with the rule in *Moore v. Department of Manpower Affairs*, 388 A.2d 516, 519, 519 (Me.1978), requiring a determination: 1) whether the employer has a reasonable standard for discharge, and 2) whether the employee acted unreasonably in failing to meet that standard.

After a hearing, the Commission again affirmed the decision of the Appeal Tribunal. The Commission found that Reid's policy and actions were reasonable, and that plaintiff's conduct was unreasonable. Plaintiff again appealed and the Superior Court dismissed the appeal and affirmed the Commission's decision.

## II.

■ Plaintiff contends that the Superior Court erred as a matter of law in affirming the Commission's decision that alcoholism is not a defense to a charge of misconduct for the purpose of determining eligibility for unemployment benefits. Rather than examine the Superior Court's decision, where as here the Superior Court ruled solely on the basis of the administrative body's record, the Law Court will review the record directly as it developed before the Commission. *See Nancy W. Bayley, Inc. v. Maine Employment Security Commission*, 472 A.2d 1374, 1377 (Me.1984). We shall determine whether "the Commission abused its discretion, committed an error of law, or made findings not supported by substantial evidence in the

record." (citations omitted). *Keith v. Saco River Corridor Commission*, 464 A.2d 150, 153 (Me.1983).

We begin as we must by considering the relevant statutory provisions. Under 26 M.R.S.A. § 1193(2), an individual will be temporarily disqualified from benefits if the Commission finds that "he has been discharged for misconduct connected with his work." "Misconduct" is defined by 26 M.R.S.A. § 1043(23):

> "Misconduct" means conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has a right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.

In *Moore v. Maine Department of Manpower Affairs*, we said that in applying sections 1043(23) and 1193(2), the Commission must determine whether the employee's conduct is "upon an objective standard, unreasonable under all the circumstances of the case." *See* 388 A.2d at 519. The Court in *Sheink v. Department of Manpower Affairs*, 423 A.2d 519, 522 (Me.1980), elaborated on *Moore's* interpretation of "misconduct": "It is not an essential of misconduct, as defined in the statute, that the employee have actual subjective intent to disregard the employer's interests. It is sufficient ... that the employee's conduct ... was so violative of employer interests" that the conduct amounts to an intentional disregard of those interests.

■ The record fully supports the Commission's conclusion that plaintiff's continued drinking on the job constituted a serious and substantial disregard of Reid's interests. The combination of plaintiff's drinking and the requirement that he drive and deal with customers threatened sub-

stantial losses to the Company. Not only had plaintiff damaged a Reid's truck in an accident (apparently occurring after plaintiff had been drinking), he also made misdeliveries and offended some of Reid's customers.

Plaintiff does not dispute that from Reid's perspective, the Company acted reasonably in firing him. Rather, plaintiff argues that his failure to conform to Reid's rules was not voluntary, and therefore his acts did not constitute misconduct. Plaintiff relies on his own testimony and that of his treating physician to attempt to prove that his drinking was involuntary.

Ultimately, the determination whether a person's drinking is voluntary must turn on the particular facts of each case. Just because plaintiff is an alcoholic, the conclusion does not necessarily follow that he was compelled to drink on the job. Contrary to plaintiff's assertions, ample evidence in the record supports a finding that plaintiff's drinking on the job was not involuntary. Plaintiff testified that if he did not have a drink during the day, he became "nervous" and "up tight" and "just didn't feel right." He acknowledged the fact that he had promised his employer that he would not drink, but stated that he continued to drink with his noon meal because "I didn't think it was bothering me any." It is significant to note that plaintiff did not testify that he was unable to overcome his discomfort, nor did he or his doctor testify that he had to drink *on the job*, as opposed to drinking at a time when it would not affect his work. Furthermore, before plaintiff was fired, his step-daughter advised that he go to a detoxification program during a vacation from work, but plaintiff declined to do so. Thus, although plaintiff testified that he did not believe that his drinking was harming him, he had notice from both his family and his employer that he had a drinking problem. He also was aware of the existence of treatment programs.

On the record before us, the Commission could rationally conclude that plaintiff's failure to cease drinking on the job and his failure to seek treatment for alcoholism was the equivalent of deliberate misconduct within section 1043(23). Accordingly, we find no error.

The entry is:

Judgment affirmed.

All concurring.