332 S.E.2d 855

**Sidney D. FEDEROFF**

v.

**Phyllis J. RUTLEDGE, Clerk of the Circuit Court of Kanawha County; Board of Review of the West Virginia Department of Employment Security; J.F. McClanahan, as Chairman, C.C. Elmore, Jr., and Gregory E. Elliott, as Commissioners; West Virginia Department of Employment Security; and Consolidation Coal Company, Employer.**

**No. 16332.**

Supreme Court of Appeals of West Virginia.

July 10, 1985.

Dissenting Opinion July 15, 1985.

---

William S. Winfrey, II, Princeton, for appellant.

Jackson, Kelly, Holt & O'Farrell, Charleston, Attn: Charles M. Surber, Jack O. Friedman, Charleston, for appellee.

McGRAW, Justice:

This is an appeal from a final order of the Circuit Court of Kanawha County which affirmed the decision of the Board of Review of the West Virginia Department of Employment Security disqualifying the appellant, Sidney Federoff, from receiving unemployment compensation. The appellant was permanently disqualified based upon a determination that he was discharged from his employment for gross misconduct.

I

The relevant facts derived from the record, including the transcript of the testimony taken before an Administrative Law Judge for the Board of Review of the West Virginia Department of Employment Security, indicate the following chain of events. The appellant was employed by the appellee, Consolidation Coal Company, from August 11, 1971 until his dismissal on February 8, 1982. In June of 1981, the appellant, then working at the appellee's Maitland mine, was interviewed for a maintenance foreman vacancy at the company's Rowland mine. The appellant was given the vacant position. Beforehand, however, the Rowland mine superintendent, who had been previously informed that the appellant had drinking and absenteeism problems, warned the appellant that absenteeism or coming to work drunk or smelling of alcohol would not be tolerated and would subject him to discharge.

An incident involving the appellant occurred approximately one week after he began his brief tenure at the Rowland mine. Upon reporting to work one morning, his immediate supervisor detected the smell of alcohol on his breath. During the evidentiary hearing before the Board of Review, this supervisor testified that upon this discovery he took the appellant to his office and told him "that it was the policy of our company—that no one would be allowed to work under the influence or with alcohol on their breath." The appellant apparently denied drinking anything prior to work that morning but, according to his own testimony, acknowledged that he had a problem with alcohol and had done some drinking the previous night. After the colloquy in the supervisor's office, the appellant was sent back to finish his work shift.

The final incident leading to the appellant's discharge occurred during a period he was assigned to work the midnight shift. On February 8, 1982, rather than reporting for work at the scheduled time of 12:01 a.m., the appellant showed up between 4:30 and 5:30 that morning. Upon learning of his substantial tardiness, the appellant was confronted by his supervisor, and later, by the mine superintendent. The mine superintendent later testified at the Board of Review hearing that he could smell alcohol on the appellant from a distance of five or six feet. The appellant's immediate supervisor also testified that he could smell alcohol on the appellant's breath, and that his eyes appeared extremely red. The appellant was discharged that morning.

In his own explanation of this incident, the appellant testified that on the evening before this shift he had a couple of drinks at home around 7:00 p.m. and then overslept after lying down to take a nap before getting ready to go to work. He further added that,

I never went to work intoxicated—I know that you could smell it. I am an alcoholic and I was drinking of a night.

When I was working the hoot owl I suppose my eyes were red. I wasn't use to that shift. Probably did look bad. The night I was terminated—it is just exactly like I told it.

Subsequent to his discharge, the appellant applied for unemployment compensation with the West Virginia Department of Employment Security. The appellee-employer filed a statement with the Department to the effect that, "Mr. Sidney Federoff was discharged for reporting to work in such a condition that the smell of alcohol was evident. Mr. Federoff was warned on several occasions against reporting to work in such a condition." The Deputy Commissioner for the Department who rendered the decision on this claim found that the appellant was discharged "for reporting to work in an intoxicated condition," thereby permanently disqualifying him from receiving any unemployment compensation due to gross misconduct.

The appellant appealed the Deputy's decision and an evidentiary hearing was held. The presiding Administrative Law Judge concluded that the discharge was for gross misconduct. The Board of Review subsequently adopted the ALJ's findings and affirmed. The appellant then appealed to the Circuit Court of Kanawha County, and by order dated April 27, 1984, the court affirmed the decision of the Board of Review.

## II

West Virginia Code § 21A–6–3 (Supp. 1984), specifies the various reasons whereby an individual, otherwise eligible, may be wholly or partially denied unemployment compensation. In this case, the relevant portion of the statute is subsection (2), which pertains to discharges predicated upon employee misconduct. This provision mandates a six-week disqualification for unemployment compensation benefits if it is determined that the claimant was discharged for ordinary misconduct, and permanent disqualification if it is determined that the reason for discharge falls within the statutorily designated sphere of "gross" misconduct.

■ As stated in Syllabus point 1 of *Kisamore v. Rutledge*, 166 W.Va. 675, 276 S.E.2d 821 (1981), "Findings of fact by the Board of Review of the West Virginia Department of Employment Security, in an unemployment compensation case, should not be set aside unless such findings are plainly wrong; however, the plainly wrong doctrine does not apply to conclusions of law by the Board of Review." *See also* Syl. pt. 1, *Butler v. Rutledge*, 174 W.Va. 752, 329 S.E.2d 118 (1985); Syl. pt. 1, *Mizell v. Rutledge*, 174 W.Va. 514, 328 S.E.2d 514 (1985); Syl. pt. 2, *Perfin v. Cole*, 174 W.Va. 417, 327 S.E.2d 396 (1985); Syl. pt. 1, *Lough v. Cole*, 172 W.Va. 730, 310 S.E.2d 491 (1983); *Farmer v. Cole*, 171 W.Va. 524, 300 S.E.2d 637, 639 (1983).

■ We first address whether the appellant's actions which caused his discharge support a determination that he is subject to a six-week disqualification for unemployment compensation due to being "discharged from his most recent work for [ordinary] misconduct." As is true in many other jurisdictions, the term "misconduct" is not defined in the unemployment compensation statutes of this State. This Court, therefore, when previously presented with the issue of the meaning of the term, adopted the following judicially evolved definition:

conduct evincing such willful and wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute. *Kirk v. Cole*, 169 W.Va. 520, 288 S.E.2d 547, 549

(1982); *see also Cooper v. Rutledge,* 169 W.Va. 288, 286 S.E.2d 920, 922–23 (1982).

Without question, the drinking of alcohol and the mining of coal "don't mix." It follows then, that an employer may choose to discharge an employee upon less than substantial evidence of actual intoxication. The testimony of the employer's witnesses, as well as the appellant's own admissions, clearly support the Board's finding that the appellant reported to work with the smell of alcohol on his breath. The Board's findings of fact in this case indicate that previous oral warnings were given to the appellant concerning the problem. Particularly in light of the fact that the appellant was employed as a foreman, this continued behavior supports a conclusion that he acted in substantial disregard of his employer's interests. The smell of intoxicants on the appellant, for example, could lead miners working under him to believe that drinking on the job was tolerated.

The appellant's defense that he did not report to work intoxicated or drink on the job is no defense to the charge that he ignored previous oral warnings not to report to work in such an odoriferous condition. Being employed in a position with supervisory duties, such as the appellant in the instant case, or being in a position where one is in contact with the employer's customers, particularly compels such a determination. *See, e.g., Green v. Brown,* 136 So.2d 147 (La.Ct.App.1961); *Doyle v. Catherwood,* 27 A.D.2d 879, 278 N.Y.S.2d 23 (1967); *Drayton v. Commonwealth,* 65 Pa.Commw. 641, 444 A.2d 185 (1982); *Unemployment Compensation Board of Review v. Walto,* 21 Pa.Commw. 545, 347 A.2d 336 (1975); *Klink v. Unemployment Compensation Board of Review,* 5 Pa. Commw. 62, 289 A.2d 494 (1972). Accordingly, we hold that under West Virginia Code § 21A-6-3(2) (Supp.1984), reporting to work smelling of alcoholic beverages, after previously being admonished not to do so, supports a determination that an unemployment compensation claimant was discharged for ordinary misconduct and thereby subject to a six-week disqualification from the receipt of benefits.

### III

As previously noted, the appellant was permanently disqualified from receiving benefits due to the determination that his discharge was due to gross misconduct. The relevant portion of subsection (2) of West Virginia Code § 21A-6-3 (Supp.1984) mandates permanent disqualification for:

reporting to work in an intoxicated condition, or being intoxicated while at work ... or any other gross misconduct.... Provided, that for the purpose of this subdivision the words "any other gross misconduct" shall include, but not be limited to, any act or acts of misconduct where the individual has received prior written warning that termination of employment may result from such act or acts.

Neither the ALJ nor the Board of Review, which adopted the ALJ's findings, indicated the specific statutory basis for their conclusion that gross misconduct was the cause for termination of employment in this case. The finding that the appellant "was discharged for allegedly being intoxicated on the job or having the smell of alcohol on his breath after previously being warned" implicates different bases under the gross misconduct provision.

The record discloses that the mine superintendent testified only to the smell of alcohol. The other witness for the employer, the appellant's supervisor, added only the observation of "red eyes", which might have resulted from either the consumption of alcohol or working the "hoot owl" shift. Upon inquiry by the ALJ as to other indications that the appellant was intoxicated, the supervisor testified that the appellant's walk and speech appeared normal. Within the context of unemployment compensation proceedings, other courts have concluded that evidence of "drinker's breath" alone is insufficient to support a finding of intoxication. For instance, in *Haste v. Kentucky Unemployment Insurance Commission,* 673 S.W.2d 740 (Ky.App.1984), after ruling

that the results of a blood alcohol test performed on the claimant were incompetent due to the lack of foundation for admission, no opportunity for cross-examination, and no showing of the chain of custody of the blood sample, the court held that the remaining evidence, that the claimant smelled of alcohol and made improper remarks to a fellow employee of the opposite sex, was insufficient to find a misconduct discharge for reporting to work under the influence of alcohol. *See also Robert v. Ross,* 55 A.D.2d 492, 390 N.Y.S.2d 691 (1977) (In case disposed of on other grounds, court observed that "whiskey breath" alone is insufficient evidence to support finding of misconduct discharge for intoxication); *Llano v. Levine,* 51 A.D.2d 620, 377 N.Y.S.2d 808 (1976) (No support for conclusion that claimant was guilty of drinking on the job or intoxicated based upon showing up for work with odor of alcohol on breath after being warned not to do so); *Thompson v. Brown,* 163 So.2d 868 (La.Ct.App.1964) (Fact that employer's office manager could smell alcohol upon claimant's breath held not to establish that he was intoxicated). Consequently, we are constrained to conclude that under the limited evidence in this case the Board of Review could not conclusively determine

that the appellant reported to work intoxicated.[1]

In unemployment compensation cases the final legal determination of the Board of Review must be supported by substantial evidence in the record.[2] The evidence in this case does not support a legal determination that, under West Virginia Code § 21A–6–3(2) (Supp.1984), the appellant reported to work in an intoxicated condition.[3]

Beyond the list of specific acts which are labeled gross misconduct in West Virginia Code § 21A–6–3(2) (Supp.1984), a claimant may be fully disqualified from receiving benefits for "any other gross misconduct [which] shall include, but not be limited to, any act or acts of misconduct where the individual has received prior written warning that termination of employment may result from such act or acts." Although the Board's findings refer to the fact that the appellant had previously been warned about "having the smell of alcohol on his breath," it is apparent from the record that any such warnings were oral. Thus, the clear language of the statute, which requires "prior written warning" before an act of misconduct is elevated to gross misconduct, precluded the Board from relying on the prior warning provision to support its determination of

---

1. This conclusion is further supported by the fact that:

   What one smells on the drinker's breath are the aromatic materials which give to each type of beverage its characteristic odor; one may recognize a beer, wine, gin, or other beverage odor—but not an alcohol breath. While alcohol rapidly disappears from the mouth after ingestion, the aromatic materials of the beverages, like those of other foods, linger and are detectable for a relatively long time. The breath odor after drinking is, therefore, unrelated to the alcohol content of the blood and *is a poor indicator of the alcoholic state of the individual.* 4 R. Gray, M.D. & L. Gordy, M.D., L.L.B., *Attorneys' Textbook of Medicine* ¶ 133.10 (3rd ed. 1985).

   The authors' observations do not cast doubt upon the validity of breath-testing devices used by law enforcement agencies to calculate blood-alcohol content. These devices measure the *actual alcohol* that is present in the alveolar (lung) air. *See id.* at ¶¶ 133.73 to 133.73(3).

2. In the criminal context, the odor of intoxicants alone is unquestionably insufficient for a

finding of guilt beyond a reasonable doubt in alcohol-related offenses. *See People v. Winfield,* 15 Ill.App.3d 688, 304 N.E.2d 693 (1973); *State v. Matchok,* 14 N.J.Super. 359, 82 A.2d 444 (1951). The level of proof necessary to show intoxication in unemployment compensation cases does not approach that necessary for criminal convictions in alcohol-related offenses, but there must be clear evidence. We note that in civil actions for damages caused by tortious injury it has been recognized that "the mere odor of alcohol on one's breath presents no question of intoxication for the determination of the jury." *Hill v. Lee,* 209 Va. 569, 572, 166 S.E.2d 274, 276 (1969) (additional cases cited therein).

3. In a situation somewhat analogous to unemployment compensation proceedings we held that a Department of Motor Vehicle determination of intoxication, if supported by a preponderance of the evidence, is sufficient to warrant the administrative revocation of a driver's license for driving under the influence of alcohol.

gross misconduct in this case.[4] The legislature, by requiring notice in writing, obviously intended to interject minimal standards of due process into the procedure where acts of ordinary misconduct can trigger full disqualification for unemployment compensation. Moreover, written warnings avoid the evidentiary problems associated with determining the existence and content of alleged oral warnings given weeks or months prior to discharge. The employer in this instance, for whatever reason, chose not to issue a written warning. Accordingly, under the unambiguous language of the statute, the appellant's discharge did not meet the legislative definition of gross misconduct warranting permanent disqualification from the receipt of unemployment compensation.

### IV

In relation to the particular factual setting of this case we acknowledge that a number of jurisdictions have recognized the condition of alcoholism as a defense, under some circumstances, to an allegation that a discharge was for misconduct. *See, e.g., Jacobs v. California Unemployment Insurance Appeals Board,* 25 Cal.App.3d 1035, 102 Cal.Rptr. 364 (1972); *Huntoon v. Iowa Department of Job Services,* 275 N.W.2d 445 (Iowa 1979), *cert. denied,* 444 U.S. 852, 100 S.Ct. 105, 62 L.Ed.2d 68 (1979); *Craighead v. Administrator,* 420 So.2d 688 (La.Ct.App.1982), *cert. denied,* 422 So.2d 154 (La.1982); *Tompkins v. Maine Unemployment Insurance Commission,* 487 A.2d 267 (Me.1985); *Leslin v. County of Hennepin,* 347 N.W.2d 277 (Minn.1984); *In re Claim of Grajales v. New York Telephone Company,* 88 A.D.2d 709, 451 N.Y.S.2d 298 (1982); *In re Claim of Alexander,* 84 A.D.2d 601, 444 N.Y.S.2d 723 (1981); *Christensen v. Employment*

*Division,* 66 Or.App. 309, 673 P.2d 1379 (1984); *but see Morrell v. Commonwealth,* 485 A.2d 1214 (Pa.Commw.Ct.1984). These decisions reflect the modern medical classification of alcoholism as a disease, where those afflicted have diminished control over many facets of the illness. The case before us does not present the question of the viability or scope of this defense in this jurisdiction. We note its existence, however, to emphasize that both employers and employees share in the responsibility of addressing this problem so prevalent in the workplace.

In order for real and substantial progress to be achieved toward eradication of this economic and social problem, employers must take affirmative steps to encourage treatment and rehabilitation. Such action may include: (1) education of supervisory personnel on detecting affected employees; (2) institution of progressive discipline programs which motivate employees to seek treatment to avoid further discipline or discharge; (3) in-house education or counseling programs by large employers; (4) systematic procedures for referral to locally available rehabilitative programs offered by Alcoholics Anonymous and community mental health centers; and (5) "opting in" for statutorily required offerings of coverage of treatment for alcoholism by group insurance plans.[5] Where these and other measures have been taken, substantially favorable results have been reported, inuring to the benefit of both employers and employees. *See* Bureau of National Affairs, *Alcoholism and Employee Relations,* (Special Report 1978); *see also* Spencer, *The Developing Notion of Employer Responsibility for the Alcoholic, Drug-Addicted or Mentally-Ill Employee: An Examination Under Federal and State Employment Statutes and Arbitra-*

---

*Albrecht v. State,* 173 W.Va. 268, 314 S.E.2d 859 (1984).

**4.** The appellee states in its brief to this Court that it was never argued in the proceedings below that the written warning provision was applicable to this case. At the same time, however, the appellee contends that the provision could have been applied in light of the written policy which was posted at the mine where the appellant was employed. The appellee's brief

does not disclose the contents of the posted policy, but, in any event, we think posting on a bulletin board is neither contemplated nor sufficient under the statute. Mere posting does not prove receipt. The statute contemplates individual receipt of a written warning issued because of past or anticipated specific acts of misconduct.

**5.** *See* West Virginia Code § 33–16–3c (1982 Replacement Vol.).

*tion Decisions*, 53 St. John's L.Rev. 659 (1979).

The afflicted employee must assume the responsibility of dealing with this problem—or face the consequences of failing to do so, including discharge and possible disqualification for unemployment compensation. Employers have a right to expect employees not to aggravate or ignore an illness which affects their ability to work. Particularly where an employer has taken measures such as the above-mentioned, and the employee is discharged for misconduct after failure· to seek and undergo treatment of his or her alcohol abuse problem, a defense of alcoholism should not be looked upon favorably by an unemployment compensation board or reviewing court. Further, we note that one of the major purposes of unemployment compensation is to provide support for displaced persons while they seek employment. Accordingly, the unemployed claimant receiving benefits has a duty to do "that which a reasonably prudent person in his circumstances would do in seeking work." West Virginia Code § 21A–6–1(3) (1981 Replacement Vol.). Refusal to undertake and pursue rehabilitative treatment for chronic alcoholism, therefore, may also place one's eligibility for continued benefits in question.

The appellant also assigns as reversible error the following points: (1) that the Board of Review improperly considered as evidence of misconduct that the appellant was hospitalized for treatment related to his drinking problem subsequent to his discharge; and (2) that the finding of fact adopted by the Board that the appellant "was warned in January of 1982" about having alcohol on his breath is plainly wrong and should be set aside. Regarding the first point, we agree that evidence of such post-discharge treatment would not be competent to show misconduct on the day of the discharge. However, there was substantial evidence in the record to support an ordinary misconduct determination without reliance upon this inadmissible evidence. Accordingly, irrespective of whether the latter was actually considered, the appellant was not prejudiced by its inclu-

sion in the findings of fact. This conclusion of no prejudice is also applicable to the Board's finding of a January, 1982 warning. The evidence, including the appellant's own testimony, clearly show he was given two oral warnings prior to the date of his discharge. The appellant has not shown he was prejudiced by the Board's mistaken identification of the date of one of these warnings.

For the reasons set forth above, the judgment of the circuit court is reversed and, pursuant to West Virginia Code § 21A–7–28 (1981 Replacement Vol.), the case is remanded to the Board of Review of the Department of Employment Security with instructions to enter an order in accordance with the principles enunciated in this opinion.

Reversed and remanded.

BROTHERTON, Justice dissenting:

I must dissent to the majority's holding in this case. The appellant in this case was an admitted alcoholic and he admitted that he was drinking on the night in question. He reported to work at least four hours late, his eyes were extremely red, and alcohol could be smelled at a distance of five or six feet. The appellant had been warned about showing up drunk on two previous occasions and on this occasion his employment was terminated. While no one of these factors would be a reliable indication that the appellant was drunk, the combination of them indicates that the claimant was inebriated.

The claimant was a foreman, whose duties included the supervision of a number of other employees of the employer. Claimant's occupation was that of a coal miner, work which by its very nature could be dangerous and would require a clear head and agile body to insure that nothing would take place on his shift that would endanger the lives of those he supervised. West Virginia Code § 21A–6–3 (Supp.1984) provides that intoxication or drunkeness is gross misconduct standing alone, and termination for which disqualifies the appellant from unemployment compensation. To reverse the Board of Review by stating

it was plainly wrong makes a mockery of the W.Va.Code. What good is there in having a law if the courts will not enforce it even in the face of overwhelming evidence?

I do not believe the decision of the Board of Review was plainly wrong and, therefore, I feel we should have affirmed the decision of the Board of Review.