# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Roy A. Higginbotham,**
**Plaintiff Below, Petitioner**

**FILED**

**November 10, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 15-1211** (Kanawha County 14-AA-89)

**Charleston Area Medical Center, Inc.,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Roy A. Higginbotham, by counsel Keith A. Jones, appeals the November 18, 2015, order of the Circuit Court of Kanawha County affirming the decisions of the Administrative Law Judge ("ALJ") and the Board of Review ("BOR") finding that petitioner was indefinitely disqualified from receiving unemployment compensation benefits until he had returned to covered employment and had worked therein for at least thirty working days. Respondent Charleston Area Medical Center, Inc. ("CAMC"), by counsel Howard G. Salisbury, Jr., filed its response, to which petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner worked for respondent as a dietary clerk from April 15, 2013, until he was discharged from employment on February 17, 2014.[1] Respondent has a tardiness policy and progressive discipline policy, both of which are set out in an employee handbook; the handbook is available to employees on respondent's internal computer network. When petitioner was hired, he was notified of the existence of the handbook and how to access the same. Between May 22, 2013, and February 17, 2014, petitioner received counseling and warnings for his tardiness, including the completion of a "coaching form," a verbal warning, written warnings, and eventually discharge.[2] According to the record before the circuit court, petitioner was tardy for

---

[1] Petitioner testified before the ALJ that he informed respondent he would be relying on public transportation to get to work.

[2] The record includes an "Employee Coaching Documentation Form" dated May 22, 2013, for tardiness with a summary of corrective plan of action to arrive to work at his scheduled time; an "Employee Attendance/Tardy Discipline Form" dated July 12, 2013, which shows that (cont. . . .)

1

work at least nineteen times during his short employment with respondent.[3] Following his termination, petitioner filed a claim for unemployment compensation benefits.

On March 14, 2014, a Workforce West Virginia Deputy entered a decision finding that petitioner was indefinitely disqualified from receiving unemployment compensation benefits until he had returned to covered employment and had worked therein for at least thirty working days. The BOR affirmed that decision by order entered June 6, 2014. Petitioner appealed that decision to the circuit court, and on November 18, 2015, the circuit court entered its order affirming the decisions below, concluding that the findings of fact made by the ALJ and adopted by the BOR were fully supported by the weight of the reliable and probative evidence and were not clearly wrong.

In its order, the circuit court found that a claimant who is otherwise eligible to receive unemployment compensation benefits may be disqualified from receiving such benefits if he is discharged due to misconduct. It also found that while a discharge for misconduct carries a six-week disqualification, an employee discharged for gross misconduct remains disqualified until he or she has returned to covered employment and worked in such employment for at least thirty days. The circuit court concluded that the many recurrent instances of tardiness over a relatively short period of employment provide sufficient indicia of willfulness, wantonness, carelessness,

---

he was issued a verbal warning for seven tardies (with the dates listed) and that "[i]t has been discussed that future occurrences related to this disciplinary action will result in: Written Warning *Three suspensions (including 2nd written warnings) within a four (4) year time period will result in discharge*" (emphasis in original); an "Employee Attendance/Tardy Discipline Form" dated September 26, 2013, for two additional tardies, which also states that three suspensions within a four year time period will result in discharge; an "Employee Attendance/Tardy Discipline Form" dated December 8, 2013, for four tardies, which also contains the discharge language; and a "CAMC Health System Attendance and Tardy Discipline Form" dated February 17, 2014, with four tardy dates listed, which states that *"[i]f the employee has two (2) occasions of absence/tardy within twelve (12) months of the last corrective action, the last corrective action will be repeated.* It has been discussed that future occurrences related to this disciplinary will result in: Select next corrective action." On February 17, 2014, a Human Resource Associate completed a "Personnel Termination Notice" for petitioner stating that petitioner was terminated under CAMC's progressive discipline policy for attendance, citing the verbal warning, written warning, second written warning, and termination due to more than four instances of being tardy. He further stated that "Roy was granted more occasions of tardy than what was required by policy in an attempt to get Roy on the right track." That form also indicates that petitioner had received written warning that the violation was a ground for discharge but that he did not receive such verbal warning.

[3] Petitioner points to an incident on July 2, 2013, wherein he reported to CAMC's Employee Health Department but the department would not release him to return to work (due to an eye issue) for fear that he would infect other employees. Therefore, he claims he was unable to report to work on time and was charged with two tardies since he was over two hours late to work.

2

or negligence to constitute misconduct. The circuit court also found that petitioner's pattern of conduct in the form of recurrent and excessive tardiness constituted misconduct within the meaning of the unemployment compensation statute and that such misconduct constituted gross misconduct under the statute. It, therefore, adopted the findings of the ALJ, which were affirmed by the BOR. Petitioner appeals from that order.

> "The findings of fact of the Board of Review of the West Virginia Department of Employment Security are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo*." Syl. pt. 3, *Adkins v. Gatson,* 192 W.Va. 561, 453 S.E.2d 395 (1994).

Syl. Pt. 3, *Smittle v. Gatson*, 195 W. Va. 416, 465 S.E.2d 873 (1995).

In the instant matter, petitioner asserts three assignments of error, though he frames his arguments in a different manner. Therefore, this Court will address the actual arguments set forth by petitioner in his brief. The first such argument is that the circuit court erred in affirming the BOR and ALJ because respondent failed to present sufficient evidence that, under the facts of this case, being tardy constituted simple misconduct under West Virginia unemployment compensation law. He argues that the purpose of the unemployment compensation system is to protect the unemployed, contending there were no allegations of "gross misconduct" which would disqualify him from receiving unemployment compensation benefits pursuant to West Virginia Code § 21A-6-3. He further asserts that respondent simply relies on petitioner's tardiness, confusing disciplinary forms, and a part of respondent's employment policies petitioner claims he had never seen. Petitioner's argument is premised on his contention that there was no evidence presented that when he was tardy he acted with willful and wanton disregard of respondent's interest. However, he concedes that his tardiness may have amounted to "unsatisfactory conduct."

West Virginia Code § 21A-6-3 specifically states that an individual is disqualified from receiving unemployment benefits "[i]f he or she were discharged from his or her most recent work for one of the following reasons . . . any other gross misconduct[.]" The statute goes on to define "any other gross misconduct" to include "any act or acts of misconduct where the individual has received prior written warning that termination of employment may result from the act or acts." *Id.* The first written warning respondent issued to petitioner, which petitioner does not dispute signing or receiving, specifically states that three suspensions, including second written warnings, within a four-year time period will result in discharge; the second written warning contains the same language. These warnings listed the dates of numerous tardies as the basis for the same. The third written warning was dated February 17, 2014. On that same date, an associate from respondent's human resources division completed a personnel termination notice for petitioner for attendance, citing the verbal warning, written warning, second written warning, and termination due to more than four instances of being tardy. Petitioner appears to contest only a few incidents of tardiness from the nineteen identified by respondent, so it is clear that he does not contest being tardy on more than four occasions. Contrary to petitioner's contention, the statute does not contain any language requiring an employer to produce evidence of intent with

regard to "any other gross misconduct." Under the clear language of the statute, neither the circuit court nor the administrative bodies before it erred in finding that petitioner was indefinitely disqualified from receiving unemployment compensation benefits until he had returned to covered employment and had worked therein for at least thirty working days.

Petitioner's second argument is that the circuit court erred in denying him unemployment benefits because he was not provided with due process under West Virginia unemployment compensation law. He asserts that even if there had been sufficient evidence that the tardiness constituted simple misconduct, the BOR and ALJ erred in finding that respondent provided petitioner with the clear written notice required by law that further tardiness could result in termination. Petitioner is critical of respondent's presentation of the employee handbook, arguing that the handbook could only be accessed on the internal computer network that he could not access while on duty. He contends that the lack of access to the handbook and the confusing forms show that the clear warning mandated by the due process requirements of West Virginia unemployment compensation law was not provided to petitioner.

The circuit court's November 18, 2015, order states that in reaching its conclusion it considered the petition for review, the documentary record consisting of the transcript of the hearing before the ALJ and exhibits admitted into evidence at that hearing, and the briefs of counsel. The circuit court listed the warnings, both verbal and written, provided to petitioner throughout his employment with respondent and adopted the findings of the ALJ, which were also adopted by the BOR. The ALJ's order found that petitioner was clearly informed that continued violations of respondent's tardiness policy would result in discharge from employment. As this Court previously recognized, "[t]he legislature, by requiring notice in writing, obviously intended to interject minimal standards of due process into the procedure where acts of ordinary misconduct can trigger full disqualification for unemployment compensation." *Federoff v. Rutledge*, 175 W. Va. 389, 395, 332 S.E.2d 855, 860 (1985). While West Virginia Code § 21A-6-3 has been amended since *Federoff*, there is no dispute that respondent issued written warnings to petitioner advising him that if his tardiness continued he would be terminated from his job. Petitioner also does not allege that respondent prevented him from accessing the handbook aside from the hours he was required to perform his job duties. Because petitioner received written notice that he would be terminated if he continued to violate respondent's tardiness policy and respondent's handbook set forth its progressive discipline policy, we find that petitioner has failed to show that he did not receive due process in the denial of unemployment compensation benefits relative to his employment with respondent.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 10, 2016

4

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II